Roy HOPKINS, Appellee,

v.

KELSEY–HAYES, INC., Appellant.

Susan COHN and Walter Cohn, her husband, Appellants in No. 79–2406, Cross-Appellee in No. 79–2605,

v.

G. D. SEARLE & COMPANY, Appellee in No. 79–2406, Cross-Appellant in No. 79–2605.

Nos. 79–1881, 79–2406 and 79–2605.

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1980.

Decided July 23, 1980.

Apell, Howard & Mathews, J. Llewellyn Mathews (Argued), Browns Mills, N. J., for appellee in No. 79–1881.

Shanley & Fisher, Raymond M. Tierney, Jr. (Argued), Abbott S. Brown, Newark, N. J., for appellee, cross-appellant in No. 79–2406 and 2605.

Rawle & Henderson, Lowell A. Reed, Jr. (Argued), Philadelphia, Pa., for appellant in No. 79–1881.

Walter R. Cohn (Argued), Elaine Harris, South Orange, N. J., for appellants in Nos. 79–2406 and 2605.

Before ADAMS, GARTH and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

These appeals [1] present us with constitutional challenges to a New Jersey statute, N.J.S.A. § 2A:14–22, which tolls the statute of limitations in actions against foreign corporations which are not represented in New Jersey, but which may nonetheless be amenable to New Jersey's long-arm jurisdiction. By contrast, foreign corporations which are represented in New Jersey receive the full benefit of all limitations statutes. Thus, the defendants here, both non-represented foreign corporations, claim that N.J.S.A. § 2A:14–22, by refusing them the protection of the limitation statute, has denied them due process and equal protection of the laws under the United States constitution.

We do not agree, as we conclude that the New Jersey statute is not irrational. Thus, we will not disturb New Jersey's legislative enactment, which we hold satisfies constitutional standards.

I.

A.

In the first of these appeals, *Cohn v. G. D. Searle & Co.*, the plaintiffs, who are husband and wife, sued G. D. Searle & Co. (hereinafter "Searle") in tort for damages caused by a birth control pill, Enovid, which had been manufactured by Searle and which allegedly contributed to a stroke suffered by Mrs. Cohn. Searle is a Delaware corporation with its principal place of business in Illinois. Although it was at all times subject to New Jersey's long-arm jurisdiction, *see* N.J.Ct.R. 4:4–4(c)(1),[2] Searle was not registered to do business in New Jersey, and it maintained no agent for service of process in New Jersey. In fact, the only personnel affiliated with Searle who were located in New Jersey, during the time period relevant to this litigation, were 40 so-called "detail-persons" who worked out of their own homes and whose sole function was to generate good-will for Searle among New Jersey doctors.

Before trial, Searle claimed the benefit of New Jersey's two year statute of limitations as a defense. N.J.S.A. § 2A:14–2.[3] In response, the plaintiffs claimed that the statute of limitations was no bar to their complaint because N.J.S.A. § 2A:14–22 (hereinafter the "tolling provision") tolls the limitations statute in any action against a foreign corporation which "is not represented in this state by any person or officer upon whom summons or other original process may be served . . . ."[4]

1. Although these cases were tried separately before two different district court judges, because they involve identical challenges to the constitutionality of a New Jersey statute, N.J.S.A. § 2A:14–22, we consolidated them for the purposes of oral argument and disposition.

2. Rule 4:4–4(c)(1) permits long-arm service upon out-of-state corporations in the following circumstance:

If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing [methods for service within the state] and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt re-

quested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.

3. N.J.S.A. § 2A:14–2 provides:

Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

4. N.J.S.A. § 2A:14–22 provides in relevant part:

If any person against whom there is any of the causes of action specified . . . is not a resident of this state when such cause of action accrues, or removes from this state after the accrual thereof and before the expiration of the times limited in said sections, *or*

With the issue thus framed, and conceding that no facts were in dispute, Searle then moved for summary judgment, asserting that the Cohns' claim was barred by the statute of limitations. Searle argued that the tolling provision was not applicable in this case because Searle was "represented" in New Jersey by its detail-persons. Alternatively, Searle contended that the tolling provision, if applicable to it, could not pass muster under the equal protection clause of the United States Constitution in that it drew an arbitrary and irrational distinction between foreign corporations represented in New Jersey and foreign corporations not so represented, but which were nevertheless subject to New Jersey's long-arm jurisdiction.

The district court rejected Searle's argument that the presence of detail-persons in New Jersey afforded Searle the benefit of the statute of limitations. On the other hand, the district court accepted Searle's contention that the tolling provision was unconstitutional. 447 F.Supp. 903 (D.N.J. 1978). Reasoning that the tolling provision must be interpreted in light of the legislative intent at the *time of its enactment*, the court held that Searle's detail-persons were not adequate corporate "representatives" within the meaning of the tolling provision inasmuch as, at the time that provision was most recently amended, in 1949,[5] jurisdic-

---

*if any corporation or corporate surety not organized under the laws of this state, against whom there is such a cause of action, is not represented in this state by any person or officer upon whom summons or other original process may be served,* when such cause of action accrues or at any time before the expiration of the times so limited, *the time or times during which* such person or surety is not residing within this state or *such corporation or corporate surety is not so represented within this state shall not be computed as part of the periods of time within which such an action is required to be commenced by the section.* The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation. (emphasis added)

Plaintiffs claimed, alternatively, that the statute of limitations was tolled by N.J.S.A. § 2A:14–21 which stops the running of the limitations period against persons who are "insane" when their causes of action accrue. In an unpublished opinion, the district court found that on this record, plaintiff's condition did not constitute insanity within the meaning of N.J.S.A. § 2A:14–21. Consequently, the district court rejected this alternative argument. In light of our conclusion, *see infra,* that N.J.S.A. § 2A:14–22 tolled the running of the limitations statute in this case, we need not, and do not, reach the merits of this contention.

**5.** As the New Jersey Supreme Court has noted, the roots of the tolling provision are traceable as far back as 1820. *See Lempke v. Bailey,* 41 N.J. 295, 196 A.2d 523 (1963). In its original form, and up until 1949, however, the tolling provision made no specific reference to corporations. *Id.* (citing Pennington, *Laws of New Jersey, 1703–1820* at 670 (1821). As of 1949, the tolling provision, which thus denied both represented and non-represented foreign corpo-rations the benefits of New Jersey's statutes of limitations, read as follows:

If any person against whom there is or may be a cause of action specified in sections 2:24–1, 2:24–2, 2:24–3, 2:24–5, 2:24–6; 2:24–16 or 2:24–17 of this title is not a resident of this state when such cause of action accrues, or removes from this state after the accrual thereof and before the expiration of the times limited in said sections, the time or times during which such person is not residing within this state shall not be computed as a part of the periods of time within which such actions are required to be commenced by said sections; and the person entitled to any such action may commence the same after the accrual of the cause therefor, within the periods of time limited therefor by said sections, exclusive of such time or times of nonresidence.

N.J.R.S. § 2:24–7.

In 1949, the tolling provision was amended to its present form, referring, for the first time, to corporations *"represented in this state* by any person or officer upon whom summons or other original process may be served." Act of May 18, 1949, 1949 N. J. Laws, ch. 125 (amending N.J.R.S. § 2:24–7) (1937)) (currently codified at N.J.S.A. § 2A:14–22) (emphasis added). The legislative statement accompanying the 1949 amendments to the tolling provision explained this provision as follows:

Foreign corporations licensed to do business in New Jersey are now deprived by judicial construction of the benefit of the statute of limitations. The purpose of this bill is to correct that situation. New York State found it necessary to make a similar change in its law in view of recent court decisions.

The New York tolling law which is referred to in the legislative statement was N.Y.C.P.A. § 19, which had been amended in 1943 so as to include as beneficiaries of the New York

tion could be obtained over a foreign corporation only by serving, within New Jersey, an "officer, director, trustee or a managing or general agent of the corporation."[6] *In personam* jurisdiction over Searle, therefore, could not have been obtained by service on mere detail-persons. 447 F.Supp. at 909–10.

Having disposed of this statutory issue, the district court then turned to Searle's constitutional claims. The court observed that the purpose of the tolling provision, when it was originally enacted and as it was subsequently amended, *see* note 5 *supra,* was to protect New Jersey plaintiffs asserting causes of action against corporate defendants which were not subject to *in personam* jurisdiction in the New Jersey courts. In light of this purpose, the court concluded that the tolling provision was no longer relevant in cases where the out-of-state defendant was now subject to the long-arm jurisdiction of the New Jersey courts—a jurisdictional expansion which, in New Jersey,[7] post-dated the 1949 amendment to the tolling provision. Therefore, the district court held that the continued application of the tolling provision in cases such as this one served no rational purpose

and consequently violated the United States Constitution. *See* 447 F.Supp. at 910–12.

Both parties appealed from the judgment of the district court. In No. 79–2605, Searle contends that the district court erred by concluding that the presence of its detail-persons in New Jersey did not entitle it to the benefit of the statute of limitations. In No. 79–2406, the Cohns argue, contrary to the district court's holding, that the tolling provision is a rational exercise of the legislature's prerogative and is thus constitutional.

### B.

In the second appeal before us, *Hopkins v. Kelsey-Hayes, Inc.,* the plaintiff, Hopkins, was injured on May 18, 1975 when a tire mounted on a rim which had been manufactured by Kelsey-Hayes exploded. This lawsuit was filed on April 27, 1978, nearly three years after plaintiff's cause of action had accrued. Kelsey-Hayes is a Delaware corporation, which has never been represented in New Jersey. However, at all times it has been subject to New Jersey's long-arm jurisdiction.

statutes of limitations, foreign corporations with "one or more officers or other persons in the state on whom a summons for such corporation may be served." Act of April 3, 1943, 1943 N.Y. Laws, ch. 263.

**6.** In 1949, the New Jersey    's governing service of process on corporations were as follows:

*N.J.R.S. § 2:26–43. Domestic corporations in personal actions; personal or substituted service summons.*

Service of a summons in a civil action commenced against a domestic corporation in any of the courts of this State may be made by delivering a copy thereof to an officer, director, trustee or a managing or general agent of the corporation personally, or by leaving a copy thereof at his dwelling house or usual place of abode with some competent member of his family of the age of fourteen years or over then residing therein, or by delivering a copy thereof to any person authorized by appointment or by law to receive service of process on behalf of the corporation, or by leaving a copy thereof at the registered office of the corporation with any person in charge thereof.

*N.J.R.S. § 2:26–44. Foreign corporations.*

Service of a summons in a civil action commenced against a foreign corporation may be made in the same manner as provided in section 2:26–43 of the Revised Statutes for service of summons upon a domestic corporation.

New Jersey's rule for long-arm service was not promulgated until 1958, N.J.Ct.R.R. 4:4–4(d) (effective September 3, 1958) (presently N.J.Ct.R. 4:4–4(c)). *See* note 2 *supra.* It was not until 1971, however, that the New Jersey Supreme Court construed the long-arm rule to permit out-of-state service "to the uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure,* 58 N.J. 264, 277 A.2d 207 (1971).

**7.** The United States Supreme Court sanctioned broad long-arm rules in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), when it held that states could exercise *in personam* jurisdiction over out-of-state defendants with only "certain minimum contacts" with the forum state. Expansive long-arm jurisdiction in New Jersey was not recognized until much later, however. *See* note 6 *supra.*

Before a different district court judge than the judge who presided in *Cohn v. G. D. Searle, Inc.*, Kelsey-Hayes claimed the benefit of New Jersey's two year statute of limitations and moved for summary judgment. Plaintiff responded that the running of the limitations statute was tolled by N.J. S.A. § 2A:14–22, *see* note 4 *supra*, and that therefore its complaint was not barred. Alternatively, the plaintiff argued that the statute was tolled under New Jersey's "discovery rule," *see Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973), *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277 (1961), under which the statute does not begin to run until the plaintiff has had a reasonable opportunity to "discover" the identity of the person who caused his injury. At the pretrial state, Kelsey-Hayes responded only to the plaintiff's first argument. It claimed that the tolling provision, when applied to defendants subject to New Jersey's long-arm jurisdiction, violated the due process and equal protection clauses of the United States Constitution.

In ruling on Kelsey-Hayes' summary judgment motion, the district court similarly confined its analysis to the constitutionality of the tolling provision. The district court judge in *Hopkins* expressly disagreed with the constitutional holding reached by the district court judge in *Cohn v. G. D. Searle, Inc., supra*. The *Hopkins* court concluded that since under New Jersey law, obtaining jurisdiction over non-represented foreign corporations process under the long-arm rule was more difficult than obtaining jurisdiction over foreign corporations which were represented in New Jersey, a rational basis existed for distinguishing between these two categories of defendants. Having found that this "rational basis" supported the tolling provision, the district court rejected both defendant's due process and equal protection arguments. *Hopkins v. Kelsey-Hayes, Inc.*, 463 F.Supp. 539, 542 (D.N.J.1978).

Pursuant to 28 U.S.C. § 1292(b), the district court and this court certified Kelsey-Hayes' interlocutory appeal from the order denying summary judgment.

## C.

Shortly before we heard argument in these cases, counsel called our attention to *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372, No. A–72/143 (N.J. Sup.Ct. June 18, 1980), a case which was at that time pending before the New Jersey Supreme Court. *Velmohos* involves the identical issues raised in these appeals.

In *Velmohos*, as in these cases, New Jersey plaintiffs had sued non-represented foreign corporations in tort, and had relied upon the tolling provision in response to a statute of limitations defense. The state defendants in *Velmohos* raised two arguments against application of the tolling provision. First, they claimed that their amenability to New Jersey's long-arm jurisdiction constituted sufficient "representation" within the state to entitle them to a limitations defense—in that case, two years. Secondly, they argued that, as applied to them, the tolling provision violated the federal constitution. In an unreported opinion, the state trial court in *Velmohos* struck down the tolling provision on federal constitutional grounds, adopting the reasoning of the district court in *Cohn v. G. D. Searle & Co., supra*. This decision was reversed by the Appellate Division of the Superior Court, which held that the tolling provision was rational and was thus constitutional. 168 N.J.Super. 520, 403 A.2d 927 (App.Div. 1979).

Notwithstanding the pendency of the *Velmohos* appeal before the New Jersey Supreme Court, we heard arguments on the merits in the appeals before us. Nevertheless, recognizing that certain holdings of the New Jersey Supreme Court would have binding effect upon us,[8] and at the suggestion of all the parties, we agreed to withhold decision in these cases pending the decision in *Velmohos*.

8. Any construction of the New Jersey tolling provision by the state's highest court would, of course, be binding upon us. Similarly, we would be bound if the New Jersey Supreme

Court *struck down* the provision on *state* constitutional grounds. However, any decision of the New Jersey Supreme Court on *federal* constitutional grounds is not binding upon us.

On June 18, 1980 the New Jersey Supreme Court filed its opinion in *Velmohos*, affirming the Appellate Division. *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372, No. A–72/143 (N.J. Sup.Ct. June 18, 1980). The court, in construing the New Jersey statute which provides for tolling, held that a foreign corporation's mere amenability to New Jersey's long-arm jurisdiction did not constitute sufficient "representation" of that corporation in New Jersey to prevent the tolling of the statute of limitations. *Id.*, 83 N.J. at 291, 416 A.2d at 378. In so holding, the New Jersey Supreme Court reasoned that the "language [of the tolling provision] must be interpreted from the intent of the Legislature in light of circumstances at the time of enactment." *Id.*, 83 N.J. at 291, 416 A.2d at 378. At the time the tolling provision was enacted, the concept of "representation" within New Jersey, as that term is used in the tolling provision, could not have included amenability to long-arm jurisdiction, because long-arm jurisdiction did not then exist. *See* notes 6 and 7 *supra.* Thus, the court reasoned that incorporating the judicial expansion of long-arm jurisdiction into its interpretation of the tolling provision would be accepting the argument that "a Rule of Court can act as an implied, partial repeal of a legislative enactment." This the Supreme Court of New Jersey refused to do. *Velmohos, supra*, 83 N.J. at 292, 416 A.2d at 378.

Having thus disposed of the defendants' statutory arguments,[9] the *Velmohos* court then proceeded to consider and, after consideration, to reject the constitutional challenges to the tolling provision. The court concluded that the existence of long-arm jurisdiction did not destroy the rationality of the tolling provision, observing that extra-territorial service is far more difficult to achieve than service within the state. *Id.*, 83 N.J. at 295, 416 A.2d at 380.[10]

Since *Velmohos* has been decided and we have received comments from the parties, we now turn to the issues presented to this court. We conclude that the defendants in both cases are subject to the New Jersey tolling provision and that the tolling provision does not violate the fourteenth amendment of the United States Constitution.

## II.

### A.

■ The first step in our analysis of the merits of these appeals has been facilitated, to a great extent, by the opinion of the New Jersey Supreme Court in *Velmohos*. For after *Velmohos*, a corporation whose only "presence" in New Jersey is that it is amenable to the state's long-arm jurisdiction, clearly cannot argue that under the tolling statute, it is "represented" in New Jersey so as to obtain the benefit of New Jersey's limitations statute.[11] In *Kelsey-Hayes*, this holding settles the statutory issue, enabling us to proceed directly to the constitutional question, because Kelsey-Hayes, the corporate defendant in that case, had no other "presence" in New Jersey apart from its amenability to long-arm jurisdiction.

In *Searle* however, the statutory issue has not been completely resolved by *Velmohos*

---

**9.** Two justices dissented from the majority opinion in *Velmohos.* They would have construed the tolling provision as inapplicable to corporations which are amenable to long-arm jurisdiction. Consequently, they did not reach the constitutional questions. *See Velmohos v. Maren Engineering Corp., supra* (Sullivan, J., dissenting, joined by Handler, J.)

**10.** The New Jersey Supreme Court observed that, had the statute been attacked under the New Jersey state constitution, its analysis and result would have been no different. *Velmohos, supra*, 83 N.J. at 294 n. 12, 416 A.2d at 379 n. 12.

**11.** Many other state courts have construed their tolling provisions differently, so that out-of-state defendants amenable to long-arm jurisdiction would be exempt from the tolling rule. *See generally* Annot., *Tolling of Statute of Limitations During Absence from State as Affected by Fact that Party Claiming Benefit of Limitations Remained Subject to Service During Absence or Nonresidence*, 55 A.L.R.3d 1158. As the *Velmohos* majority points out, however, those cases involved different statutory language than the New Jersey tolling provision. *See Velmohos, supra* 83 N.J. at 291 n. 8, 416 A.2d at 377 n. 8.

in light of the presence of Searle's detail-persons in New Jersey. The district court in *Searle* ruled that the existence of these detail-persons did not preclude the operation of the tolling statute, and Searle's appeal from that ruling is the subject of No. 79–2605. Although it has not expressly decided the issue before us, we are convinced from the *Velmohos* opinion, that the New Jersey Supreme Court would similarly conclude that Searle's detail-persons are not the "representatives" contemplated within the tolling provision.

As previously indicated, in *Velmohos*, the New Jersey Supreme Court emphasized that the language of the tolling provision "must be interpreted from the intent of the Legislature in light of the circumstances at the time of enactment." *Velmohos, supra*, 83 N.J. at 291, 416 A.2d at 378. At the time the tolling provision was amended to refer to corporations which were "represented" in New Jersey, *see* note 5 *supra*, personal service upon minor functionaries such as Searle's detail-persons would not have sufficed to obtain jurisdiction over foreign corporations. *In personam* jurisdiction over foreign corporations could only have been obtained by service upon officers or duly appointed agents of the company. *See* N.J.R.S. § 2:26–44 (repealed) (quoted in note 6 *supra*); *Porcelli v. Great Atlantic & Pacific Tea Co.*, 128 N.J.L. 603, 27 A.2d 641 (Sup.Ct.1941); *cf.* N.J.Ct.R. 4:4–4(c)(1); *Wright v. News Syndicate Co.*, 35 N.J.Super. 133, 113 A.2d 215 (1955) (service on "any servant of the corporation" within New Jersey appropriate under current rules). Thus, the New Jersey legislature could not have intended that individuals such as Searle's detail-persons could obtain the benefits of the limitations statutes for their companies, particularly since the detail-persons had only a minimal affiliation with Searle and could not, at the time the tolling provision was enacted, have subjected Searle to *in personam* jurisdiction in New Jersey.

Moreover, it is significant, as the New Jersey Supreme Court noted, *see Velmohos, supra*, 83 N.J. at 291, 416 A.2d at 377, that the tolling provision speaks of individuals who "represent," rather than just "act" for, the foreign corporation in New Jersey. By contrast, the applicable court rules of service speak only of "servants" who merely "act" in New Jersey. *See* N.J.Ct.R. 4:4–4(c)(1). It appears to us, therefore, that the statutory tolling provision contemplates a much more significant corporate figure or presence—one capable of "representing" the corporation—than does the service rule. This higher standard which requires "representation" in New Jersey before a foreign corporation can receive the benefits of the limitations statutes, comports with the original purpose of the tolling rule: to permit plaintiffs who have causes of action against foreign corporate defendants which are not represented in New Jersey, to maintain the viability of their actions despite the passage of time. Moreover, this purpose is consistent and compatible with New Jersey's policy of liberally construing limitations statutes so as to preserve, whenever possible, a plaintiff's opportunity to litigate his claim on the merits. *See Velmohos, supra; Galligan v. Westfield Centre Service, Inc.*, 82 N.J. 188, 412 A.2d 122 (1980).

Therefore, in light of its own statutory analysis, we are satisfied that the New Jersey Supreme Court, if faced with this question, would hold that Searle's detail-persons do not constitute "representation" of Searle in New Jersey, sufficient to provide New Jersey's limitations protections to Searle. To the contrary, we are convinced that the New Jersey Supreme Court would hold, and consequently we hold, that Searle's detail-persons do not exempt it from the tolling provision. Accordingly, unless the tolling provision is unconstitutional, and we conclude that it is not, the limitations statute will not bar the plaintiffs' claims against the defendants in both cases before us.

B.

Thus, there remains for consideration only the constitutional challenges made here to the tolling provision. The defendants concede that the tolling provision does not implicate any fundamental interest or

suspect classification.[12] In these circumstances, we ordinarily afford great leeway to legislative judgments. As we recently stated:

> In reviewing a state statute or constitutional provision under the due process or equal protection clause, a court must determine if the provision rationally furthers *any* legitimate state objective. "For these purposes, it is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision. . . ." *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). The court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack. *See Weinberger v. Salfi,* 422 U.S. 749, 780, 95 S.Ct. 2457, 2474, 45 L.Ed.2d 522 (1975); *Williamson v. Lee Optical Inc.,* 348 U.S. 483, 487–90, 75 S.Ct. 461, 464–66, 99 L.Ed. 563 (1955); *Trafelet v. Thompson,* 594 F.2d 623, 626 (7th Cir.), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979).

*Malmed v. Thornburgh,* 621 F.2d 565 at 569 (3d Cir. 1980) (Aldisert, J.) (emphasis in original). Thus, the defendants challenging the constitutionality of the tolling provision have the difficult burden of demonstrating that the provision cannot "rationally further[ ] *any* legitimate state objective." *Id.*

In seeking to meet this burden, the defendants argue that the tolling provision violates the constitution because it is overprotective.[13] They argue that the purpose of the tolling provision was to protect New Jersey plaintiffs who could not obtain *in personam* jurisdiction over out-of-state defendants.[14] The defendants contend that the tolling provision is no longer relevant or

---

12. Indeed, this concession would seem to be compelled by *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) where the Supreme Court held that repeal of a statute of limitations as to debts which had already been barred did not implicate the fourteenth amendment rights of the debtor. In reaffirming *Campbell,* some 60 years later, the Court, speaking through Justice Jackson, stated:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation.[13] They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (footnote omitted). Thus, it is clear that the defendants have no "right" to protection of the statute of limitations. Their only claim can be that the state legislature acted irrationally, under the circumstances, by denying them the benefit of the limitations statute.

13. When no fundamental interests or suspect classifications are involved, both "underinclusive" and "overinclusive" statutes are subjected to the same "minimum rationality" test. Nevertheless, it has been argued that "overinclusive" or overprotective statutes present even less need for judicial action than statutes which are "underinclusive" in their regulatory sweep:

> "Overinclusiveness," a second variant of legislative approximation for which a classification may be overturned,[16] poses less danger than underinclusiveness, at least from the viewpoint of political accountability, for overinclusiveness does not exempt potentially powerful opponents from a law's reach.

L. Tribe, *American Constitutional Law,* 999 (1978). (Footnote omitted).

14. In a technical sense, this appears to be an oversimplification. In 1949, the tolling provision was amended to exempt foreign corporations "represented in this state by any person or officer upon whom summons . . . may be served. . . ." Four years earlier, however, the Supreme Court had greatly expanded the states' jurisdictional powers over out-of-state defendants, permitting the state courts to exercise *in personam* jurisdiction over out-of-state defendants with "certain minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct.

needed to promote this interest in cases where an out-of-state corporate defendant is amenable to New Jersey's long-arm jurisdiction. In such cases, they contend the plaintiffs may assert their causes of action and serve their complaints upon non-represented foreign corporate defendants in the same fashion as they serve domestic corporations or foreign corporations "represented" in New Jersey. Thus, they claim that the extra protection provided New Jersey plaintiffs by the tolling provision, is unnecessary and arbitrary in light of the original purpose of the tolling provision. Being arbitrary, they contend the statute is therefore unconstitutional.

The defendant's argument overlooks the fact that the tolling provision must be upheld if it "rationally furthers *any* legitimate state objective," without regard to whether the legislature specifically focused on that objective. *Malmed v. Thornburgh, supra.* In this case, at least one such legitimate objective is readily apparent: the tolling provision eases the burdens upon New Jersey plaintiffs prosecuting lawsuits against out-of-state defendant corporations which are not represented in New Jersey and which, in a great many instances, are difficult to locate and to serve, despite the availability of the long-arm rule. The New Jersey Court Rules, by their very terms, make clear that long-arm service may be utilized only as a last resort. They provide that service may be made

> [u]pon a domestic or foreign corporation, by serving  .  .  . either an officer, director, trustee, or managing or general agent; or any person authorized by appointment or by law to receive service of process on behalf of the corporation; or the person at the registered office of the corporation in charge thereof. If service cannot be made upon any of the foregoing, then it may be made upon the person at the place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then

upon any servant of the corporation within this State acting in the discharge of his duties. *If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing* and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.

N.J.Ct.R. 4:4–4(c)(1) (emphasis added).

Moreover, Justice Pashman in writing for the New Jersey Supreme Court in *Velmohos* emphasized the special burdens which inhere in achieving long-arm service:

> Under our rules, extra-territorial service is not simply an alternative to service within the State. Plaintiffs may not resort to out-of-state service unless proper efforts to effect service in New Jersey have failed. The rule imposes a further burden on a plaintiff by requiring him to gather sufficient information to satisfy a court that service is "consistent with due process of law."

*Velmohos, supra,* 83 N.J. at 296, 416 A.2d at 381.

Since long-arm service is more difficult to achieve than service within the state, it is not irrational for New Jersey to distinguish between two classes of foreign corporations. Those foreign corporations which are represented in New Jersey, and are thus more readily available to plaintiffs, are afforded limitations protections. On the other hand, the limitations statutes are tolled against foreign corporations which are not represented in New Jersey and thus are not as available to New Jersey plaintiffs. This distinction between represented and non-represented foreign corporations reflects the pragmatic difficulties which may be

---

154, 90 L.Ed. 95 (1945). Thus, at the time the tolling provision was last amended, New Jersey plaintiffs could have constitutionally obtained service on foreign corporations who did not have "representatives" in the state. The New

Jersey courts did not recognize the full expanse of long-arm jurisdiction until much later, however. *See Avdel Corp. v. Mecure,* 58 N.J. 264, 277 A.2d 207 (1971); notes 6 and 7 *supra.*

encountered by plaintiffs suing foreign corporations. Since service of process under the long-arm statute is more difficult and time-consuming to achieve than service within the state, and since out-of-state, non-represented corporate defendants may be difficult to locate let alone serve, tolling the statute of limitations protects New Jersey plaintiffs and facilitates their lawsuits against such defendants. Because the tolling provision fulfills the legitimate state purpose of easing the special burdens of suits against non-represented foreign corporations, we cannot say that the distinction which it recognizes is irrational.[15]

In arguing against the constitutionality of the tolling provision, the defendants attempt to distinguish between the service of a complaint and the filing of a complaint. They point out that, under New Jersey practice, a plaintiff can file a "John Doe" complaint, and thereby stop the running of the statute of limitations without having served the defendant with process. *See* N.J.Ct.R. 4:4–1 (summons must be served within 10 days of filing a complaint or action may be dismissed on defendant's motion). This procedure, they argue, enables a plaintiff to preserve his complaint against a statute of limitations defense, notwithstanding any later difficulties encountered in serving process. Because of this procedure, the defendants contend that the protection afforded by the tolling provision is superfluous and that the tolling provision is thus arbitrary, irrational and, consequently, unconstitutional.

■ We are not persuaded by the defendants' argument. In the first instance, the protection afforded plaintiffs by the "John Doe" procedure is imperfect, at best. Complaints filed in this manner are subject to dismissal after six months on the court's

own motion, unless the plaintiff, by proving his diligence, can convince the court to retain the case on the docket. N.J.Ct.R. 1:13–7. We do not believe that, given their crowded calendars, the state courts would permit a "John Doe" complaint to remain on the docket for a lengthy or indefinite period of time. Thus, the "John Doe" procedure does not, in fact, afford New Jersey plaintiffs the same protection as the tolling provision. Furthermore, the defendants' argument suffers from a more basic flaw. Even if the tolling provision could be considered superfluous in light of the "John Doe" procedure, this would not necessarily lead to our holding that the tolling provision is arbitrary or irrational. Nothing in law or logic prevents the New Jersey legislature from providing New Jersey plaintiffs with a mechanism for relief from the burdens of suits against non-represented foreign corporations which is additional to any mechanism found in the Court Rules.

Accordingly, since we find that N.J.S.A. § 2A:14–22 has a rational foundation, and recognizing that rationality is the test for both due process and equal protection challenges in this context, *see Malmed v. Thornburgh, supra,* we reject the defendants' constitutional attacks on the statute.

### III.

We therefore hold that the foreign corporate defendants in these cases, not being represented in New Jersey, are subject under New Jersey law to New Jersey's tolling provision, which we hold to be constitutional. Thus, in these cases, defendants may not claim the protection of the statute of limitations. In light of our conclusion, the interlocutory order of the district court which denied summary judgment in *Hopkins v. Kelsey-Hayes,* at No. 79–1881, will

**15.** Although many courts have construed state tolling statutes so as to exempt individuals who are subject to service of process in the state, *see* note 10 *supra,* no court, other than the district court in *Cohn v. Searle, supra,* has concluded that such a result was mandated by the constitution. In fact, in *Vaughn v. Deitz,* 430 S.W.2d 487 (Sup.Ct.Tex.1968), the Texas Supreme Court specifically upheld the Texas tolling statute against a constitutional argument identical to that raised here.

Moreover, in *Bauserman v. Blunt,* 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316 (1893), the Supreme Court gave effect to a Kansas statute which tolled the statute of limitations in an action against an out-of-state defendant who was nevertheless subject to service in the state. Although *Bauserman* did not discuss the constitutional issue, the court implicitly recognized the constitutionality of this type of tolling provision.

be affirmed, and the order of the district court in *Cohn v. G. D. Searle*, at Nos. 79–2406 and 79–2605, entering judgment for the defendant will be reversed. Each case will be remanded to the particular district court for further proceedings. Costs in each case will be taxed against the respective defendant.