OXFORD CONSUMER DISCOUNT COMPANY OF NORTH PHILADELPHIA, A CORPORATION, PLAINTIFF-RESPONDENT, v. ANTHONY E. STEFANELLI AND THERESA A. STEFANELLI, DEFENDANTS-APPELLANTS, AND ARTHUR J. SILLS, ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR, AND FIRST MERCANTILE CONSUMER DISCOUNT COMPANY, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Petition for Rehearing Argued December 16, 1968—
Decided February 24, 1969.

Before Judges CONFORD, LABRECQUE and HALPERN.

*Mr. Arnold K. Mytelka* argued the cause for intervenor First Mercantile Consumer Discount Company (*Messrs. Clapp & Eisenberg,* attorneys; *Mr. Alfred C. Clapp,* of counsel).

*Mr. Morris L. Weisberg,* of the Pennsylvania Bar, admitted *pro hac vice,* argued the cause for plaintiff-respondent (*Mr. Herman J. Ziegler,* attorney).

*Mr. Clive S. Cummis* argued the cause for *amicus curiae,* Middle Atlantic Finance Association (*Mr. Alan J. Gutterman* and *Mr. Steven S. Radin,* on the brief).

*Mrs. Annamay T. Sheppard* argued the cause for defendants-appellants (*Mr. Edward Carl Broege, Jr.,* on the brief).

*Mr. Joseph A. Hoffman,* First Assistant Attorney General, argued the cause for Attorney General, intervenor (*Mr. Arthur J. Sills, Attorney General of New Jersey,* attorney; *Mr. Stephen Skillman* and *Mr. Douglas J. Harper,* Deputy Attorneys General, on the brief).

*Mr. Jack B. Kirsten* argued the cause for *amici curiae,* Paul V. Durkin and Ellen Durkin (*Messrs. Kirsten & Solomon,* attorneys).

The opinion of the court was delivered by

CONFORD, S. J. A. D.   On September 11, 1968 this court held the Secondary Mortgage Loan Act of 1965 (*N. J. S. A.* 17:11A–1 *et seq.*; *L.* 1965, *c.* 91) to be, in the main, a valid enactment, constitutionally applicable in relation to the enforcement of the obligation on a secondary mortgage loan to New Jersey borrowers, secured by real property situated in this State, although the loan agreement was executed in Pennsylvania and the loan repayable in that state to a lender which was a Pennsylvania corporation carrying on a loan business in that state under authority of a licensing statute there in effect. *Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli,* 102 *N. J. Super.* 549. We consequently barred recovery by plaintiff lender of any part of the loan or interest due thereon, finding that the loan agreement called for interest in excess of that allowed by the New Jersey act and was violative of the act in one other respect. We acted under the mandate of *section* 29 of the act, which provides that no obligation arising out of a secondary mortgage loan (as defined by the act) shall be enforceable in the courts

of this State unless negotiated and made in full compliance with the provisions of the act. Certain other allegations by defendants as to violations of the act were not passed upon, as they involved disputes of fact which had not been duly tried.

Thereafter, we denied an application by the plaintiff for rehearing. At the same time, however, we granted a petition of First Mercantile Consumer Discount Company ("First Mercantile"), another Pennsylvania small loan company, for leave to intervene in the cause for the purpose of permitting it to be heard to contend on petition for rehearing that the September 11, 1968 decision of the court should be held not to have retroactive effect as to loan transactions entered into before the effective date of that decision by Pennsylvania corporations licensed in the State of Pennsylvania to make such loans, where the loans were not only made there but were also repayable there and in all other respects in conformity with Pennsylvania law.

We allowed the intervention, although such action on appeal is quite rare and granted only in extraordinary circumstances — see *Hurd v. Illinois Bell Telephone Company,* 234 *F. 2d* 942, 944 (7 *Cir.* 1956) ; *McKenna v. Pan American Petroleum Corporation,* 303 *F. 2d* 778, 779 (5 *Cir.* 1962) — on the basis of the following showing.

First Mercantile and another Pennsylvania loan company had been sued by certain of their New Jersey borrowers, prosecuting a class action in the Chancery Division, for an injunction to restrain enforcement of all secondary mortgage loans made on the security of New Jersey realty by such corporations, although the loan agreements of plaintiffs in those actions were all executed and provided to be repaid in Pennsylvania. Pending the appeal in the instant case we had granted First Mercantile leave to appeal an order of the Chancery Division permitting the continued prosecution of the suit as a class action.

First Mercantile filed proofs on its petition for intervention in the present case, showing it had made secondary

mortgage loans secured by New Jersey realty amounting to approximately $5.5 million, all of which would be uncollectible if our decision of September 11, 1968 were applied retrospectively; that such a result would be catastrophic, causing insolvency of First Mercantile's parent corporation, throwing 50 of its employees out of work, and jeopardizing loans of about $8 million to these corporations made by various banks, insurance companies and other lenders; that unless an early judicial declaration as to the inapplicability of the decision retrospectively to Pennsylvania lenders in First Mercantile's position were forthcoming, its many New Jersey borrowers would repudiate their obligations and cause ruin to the company; and that it had made loans on secondary mortgages on New Jersey realty, notwithstanding enactment of the New Jersey act in 1965, on the basis of advice of both Pennsylvania and New Jersey counsel that these loans were Pennsylvania transactions subject to Pennsylvania law and not subject to the Secondary Mortgage Loan Act of 1965 or any other New Jersey law.

Upon inquiry by the court, *amicus curiae* Middle Atlantic Finance Association advises that nine of its Pennsylvania members had made out-of-state secondary mortgage loans secured by New Jersey real estate, prior to September 11, 1968, aggregating $4,460,881.96 (not inclusive of loans by First Mercantile but including loans by plaintiff). An undeterminable additional amount of such loans has been made by other Pennsylvania members of that organization.

In addition to the original parties and *amicus,* Paul V. Durkin and Ellen Durkin, plaintiffs in the aforementioned pending class action against First Mercantile, have been admitted herein as *amici curiae* to file a brief and to argue in opposition to the position of that intervenor. Plaintiff supports the position of intervenor, having considerable stake in the issue by virtue of other loans outstanding affected by our September 11, 1968 decision. However, as noted, we have already denied its petition for rehearing of this case in relation to the effect of the decision in relieving the Ste-

fanelli defendants of liability, taking the view that the latter are entitled to retain the fruits of their victory regardless of our conclusion as to the pending request for restrictive application of the decision to other loans. See *Goldberg v. Traver*, 52 *N. J.* 344, 347 (1968). The Stefanellis nevertheless join the Attorney General and the Durkins in opposition to the position of the intervenor.

The proponents of intervenor's position rest their basic argument on the alleged unfairness and injustice of applying the September 11, 1968 holding to loans made prior thereto so as to wipe out all their equity in these loans, but they concede[1] that they should justly be confined to recovery of the principal sums and to such interest and other charges (so far as agreed to in the loan transaction) which do not exceed the maximum permitted by New Jersey or Pennsylvania law, whichever is lower. *Cf. Ditmars v. Camden Trust Co.*, 10 *N. J.* 471, 494-98 (1952). The Attorney General adamantly opposes judicial extension of any consideration to intervenor and contends for literal application of section 29 of the act, barring any recovery at all on secondary mortgage loans violative of the act in any respect, whenever made. He takes the position that the public policy declared by the Legislature should not be modified to any degree because the principle of prospective application of judicial decisions is not properly invocable in the existing circumstances.

Intervenor and plaintiff contend that they reasonably relied, after adoption of the act in 1965, upon what they urge was the then generally held view that loans made in a particular state by a lender organized in that state, to be repayable there, were governed as to validity by the law of that state, even if secured by lien on real estate situated elsewhere. That general principle enjoys some color of support in *Proposed Official Draft of the Restatement, Conflict of*

---

[1] Subject to their reserved right to challenge the entire decision on its merits on appeal to the New Jersey Supreme Court.

*Laws* (1968), § 195, "Contracts for Repayment of Money Lent," comment (a). (This section and comment are also found in earlier drafts.) The contention is, further, that the reliance by this court in its decision of September 11, 1968, on § 6 (1) of the 1967 *Restatement* draft, as to the controlling effect of a direction as to choice of a law contained in a statute of the forum, was novel and surprising in that there is no express provision in the New Jersey act as to choice of law and in that this court found an implied direction in the act for control of the questioned transaction by the provisions of the act — an implication which intervenor's advisers should not be blamed for not having also drawn from the act. See 102 *N. J. Super.*, at *pp* 563–564. It is argued that average, competent counsel would not have predicted this court's decision on the choice of law question but rather would have concluded that Pennsylvania law controlled as to the validity of the loan in the circumstances presented.

It is further maintained by the supporters of the intervenor's position that none of the Pennsylvania corporate lenders could have complied with the requirement of section 3 of the act that holders of at least 50% of the stock in corporate applicants for lending licenses should have been residents of New Jersey for two years prior to the application. Although we held that provision of the act unconstitutional (and severable from the remainder) (102 *N. J. Super.*, at *pp.* 560-562), it is argued that the existence of the requirement in the act as passed nevertheless contributed to the reasonable overall impression of Pennsylvania corporate lenders not owned to the extent of 50% by New Jersey residents, and thus not capable of qualifying as licensees under the act, that they would surely not be held to come under the confiscatory sanctions of the act as to loans made and repayable in Pennsylvania although secured by secondary mortgages on New Jersey realty.

Finally, although the point is not made in any of the briefs on the intervenor's side, there was discussion at the oral argument as to whether there was some element of sur-

prise or novelty in the determination of this court in the September 11, 1968 decision that application of the statute to such transactions as are here involved did not offend the Commerce Clause of the Federal Constitution, in view of the court's substantial reliance in that regard on the 1965 dismissal for want of federal jurisdiction of the appeal in *Fairfax Family Fund, Inc. v. California*, 382 *U. S.* 1, 86 *S. Ct.* 34, 15 *L. Ed. 2d* 6 (1965) (102 *N. J. Super.*, at *pp.* 570–572), and in further view of the general constitutional prohibition of local state licensing requirements in relation to exclusively interstate transactions. See *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 *U. S.* 276, 81 *S. Ct.* 1316, 6 *L. Ed. 2d* 288 (1961).

▋ There is no question but that appellate courts in this State and elsewhere have long regarded themselves as empowered and justified in confining the effect of a decision of first impression or of novel or unexpected impact to prospective application if considerations of fairness and justice, related to reasonable surprise and prejudice to those affected, seemed to call for such treatment. *Great Northern R. Co. v. Sunburst Oil & Ref. Co.*, 287 *U. S.* 358, 53 *S. Ct.* 145, 77 *L. Ed.* 360 (1932); *State v. Johnson*, 43 *N. J.* 572, 582–583 (1965), affirmed *sub nom. Johnson v. New Jersey*, 384 *U. S.* 719, 86 *S. Ct.* 1772, 16 *L. Ed. 2d* 882 (1966); *Goldberg v. Traver*, 52 *N. J.* 344 (1968); *Irwin v. Irwin*, 433 *P. 2d* 931 (*Okl. Sup. Ct.* 1965); *Johnson v. Stoveken*, 52 *N. J. Super.* 460 (*App. Div.* 1958); *State v. Koonce*, 89 *N. J. Super.* 169, 185 (*App. Div.* 1965). The decision in *Wangler v. Harvey*, 41 *N. J.* 277 (1963), illustrates the variations in viewpoint reasonably entertainable by different judges as to whether justifiable reliance on a previous notion of the law could be found in reference to a particular case of judicial reformulation of the law (the majority of the court held there was no justifiable prior reliance).

▋ While most of the decided cases on prospective effect concern decisions expressly overruling previous holdings and announcing explicit changes in the law, see Levy,

"Realist Jurisprudence and Prospective Overruling," 109 *U. Pa. L. Rev.* 1 (1960), *passim,* the practice is not limited to such cases but may also apply to situations where a court renders a first-instance or clarifying decision in a murky or uncertain area of the law but under circumstances where members of the public or public entities could be found to have previously and not unreasonably relied on a different conception of the state of the law. See *Goldberg v. Traver, supra* (52 *N. J.,* at *pp.* 346–347) ; *Irwin v. Irwin, supra* (433 *P. 2d,* at *p* 934) ; *Coffey v. Anderson,* 371 *S. W. 2d* 624, 626 (*Ky. Ct. App.* 1963) ; *Nani v. Zoning Board of Review of Town of Smithfield,* 242 *A. 2d* 403 (*R. I. Sup. Ct.* 1968). It is noteworthy that in all of the first three of the last-cited cases the new determination of the state of the law, held applicable only prospectively, involved matters of statutory construction. This suffices to refute any notion that the doctrine of prospective effect is necessarily inapplicable to determinations of statutory or constitutional construction as distinguished from those of common law.

We thus turn to consideration of whether members of the public in the position of First Mercantile, that is to say, Pennsylvania corporations making loans in Pennsylvania, repayable there, and complying in all respects with applicable Pennsylvania regulatory statutes, but secured by secondary mortgages on New Jersey realty, will be unfairly and unjustly treated if such loans, made prior to the effective date of our September 11, 1968 decision, are rendered totally uncollectible in this State by virtue of that decision.

The Attorney General points to certain evidence, collected *ex parte* and set forth in his appendix, tending to show that principals in the plaintiff corporation and First Mercantile, or in associated corporations, were active in inquiries of the New Jersey Department of Banking and Insurance concerning the reach of the act shortly after its adoption. The president of First Mercantile, appearing on behalf of a New Jersey corporation, attended a hearing relating to adoption of proposed rules and regulations of the

Department implementing the act, one of which, Rule 1, declared that notwithstanding the place of execution of a secondary mortgage loan, it would be deemed subject to the act if the real property is located in this State (a rule held invalid in the September 11, 1968 decision, 102 *N. J. Super.*, at *p.* 564).

The Attorney General further shows that a Pennsylvania finance association lawyer testified at the departmental hearing in opposition to the residency requirements in *section* 3; also that an officer of a company associated with the present plaintiff corporation inquired as to the effect of the act as against Pennsylvania licensed discount companies, and was sent a response calling attention to Rule 1 and various sections of the act, including *section* 29. On December 6, 1965 a corporation associated with the present plaintiff and a Pennsylvania association of finance companies, of which the parent corporation of First Mercantile was a member, sued the Commissioner of Banking and Insurance in the Chancery Division to enjoin enforcement of a number of provisions of the act (but not Rule 1), and on March 17, 1966 judgment was entered in that action holding *section* 3 to be unconstitutional. It is also shown that New Jersey corporations associated, respectively, with First Mercantile and plaintiff, obtained licenses under the act, and that one of them has made some New Jersey loans pursuant thereto.

We regard the foregoing data as of rather limited significance in relation to the issue before us. It evidences at most that certain of the Pennsylvania small loan interests were conscious of and concerned about the possible effect of the New Jersey act upon loans they might make in Pennsylvania secured by secondary mortgages on New Jersey realty. But this does not necessarily manifest that they were unreasonable in relying upon legal advice that if made in Pennsylvania, and repayable there, the loans would be governed as to legality solely by the law of Pennsylvania, in which state the lending corporations were organized and licensed to make such loans. See 102 *N. J. Super.*, at *p.* 559.

The intervenor agrees with the Attorney General that, in principle, the existence of reliance by laymen on prior law should be judged by what "competent legal counsel" would have advised. We would add the qualification, "legal counsel of average competence."

It is difficult for a court which has examined at length into the merits of the conflict of laws and interstate commerce questions and formulated conclusions thereon, as we did in the September 11, 1968 decision, now retrospectively to hypothesize the advice that counsel of average legal competence would have given the Pennsylvania companies as to their right to enter into these transactions free from imperilment of their investment because of the 1965 New Jersey statute. But we think that in arriving at an ultimate decision herein we should weigh the probabilities in relation to the foregoing factor in the light of the magnitude of the potential losses of the lenders as compared with the amount of gains to individual borrowers consequent upon a rejection of the doctrine of prospective application in this case.

Applying that approach, we have concluded that on the basis of the showing of the intervenor and plaintiff, overall considerations of fairness and justice call for some degree of restriction of retroactive application of our September 11, 1968 decision in relation to loans by licensed Pennsylvania lenders made prior to the effective date thereof, where the loans comported with the regulatory Pennsylvania law, the agreements were executed in that state, and the obligations were repayable there. We are satisfied that there could be said to have been sufficient doubt in advance of our decision that the New Jersey act applied to such loans, whether constitutionally, with relation to choice of law, or otherwise, especially as to lending corporations having less than 50% of shareholders resident in New Jersey, that, weighed against the potential catastrophic effect thereof on some of such lenders, unrestricted retroactive operation of the decision should be disallowed.

The question remains as to precisely what restrictions on retroactivity should be imposed.

■ We have concluded that we should not now go beyond adjudicating relief from retroactivity in respect of transactions where there was no intermediation of any kind by others, operating in this State, between Pennsylvania lender and New Jersey borrower.

■■ We are clear, first, that Pennsylvania lenders obtaining New Jersey loan business on a regular, continuing basis by or through agents, brokers, or representatives operating in this State, whether or not technically independent contractors, could not reasonably have been advised in advance that choice of law and interstate commerce factors would immunize the loans from the effect of the New Jersey act. As to such loans, therefore, the decision of September 11, 1968 will remain fully retroactive. As to any other type of case involving some degree of causal intermediation between the lender and the borrower by operatives functioning in this State, the court should appraise the particular facts of the individual case for determination as to whether considerations of fairness and justice call for relief from retroactivity of the September 11, 1968 decision in such instance, according to the criteria discussed above.

■ It is next necessary to decide whether there should be any curtailment of the lender's claim to interest and other charges where it ultimately qualifies otherwise for relief from retroactivity. As heretofore noted, plaintiff and intervenors contend that fairness would be served by requiring the borrowers to pay the interest rates and other charges (if specifically agreed to in the loan contract) allowed for such transactions by either the New Jersey or Pennsylvania statute, whichever is the lower. We think some further curtailment of recoverable interest is appropriate in order to give a degree of substantial effect to the circumstance that, in finality, the lenders have violated New Jersey law as substantively determined by our prior decision. Therefore recovery will be lim-

ited to 6% per annum simple interest computed on principal balances outstanding on funds actually advanced.

 In relation to other loan charges, in view of the fact that, by and large, aggregate allowable charges to borrowers are heavier under the New Jersey statute than that of Pennsylvania (102 *N. J. Super.*, at *pp.* 556, 560), we regard it as fair to allow the lender to retain any charges contracted for which are allowable under the Pennsylvania statute.

The opinion of the court heretofore rendered in the cause is to be taken as supplemented by this determination on the petition for rehearing of the intervenor.