WALTER P. COONS, PLAINTIFF-PETITIONER, v. AMERICAN
HONDA MOTOR CO., INC., A CORPORATION, ET AL., DE-
FENDANTS, AND HONDA MOTOR COMPANY, LTD. OF JA-
PAN, A CORPORATION, DEFENDANT-RESPONDENT, AND
ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR-RE-
SPONDENT.

Argued January 24, 1984—Decided June 13, 1984.

*Robert H. Jaffe* argued the cause for petitioner (*Jaffe & Schlesinger*, attorneys; *Robert H. Jaffe* and *Howard G. Schlesinger*, on the brief).

*Harry Haushalter*, Deputy Attorney General, argued the cause for intervenor-respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel).

*John I. Lisowski* argued the cause for respondent Honda Motor Company, Ltd. of Japan, etc. (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *John I. Lisowski* and *Paul A. Lisovicz*, on the brief).

*Karl Asch* argued the cause for *amicus curiae pro se* (*Karl Asch*, attorney; *Karl Asch* and *Philip A. Tortoreti*, on the briefs).

*I. Michael Greenberger*, a member of the District of Columbia bar, argued the cause for *amicus curiae* Brinco Mining Limited (*Robinson, Wayne, Levin, Riccio & La Sala*, attorneys; *I. Michael Greenberger, Susan S. Collins* and *Elizabeth Runyan Geise*, members of the District of Columbia bar, of counsel).

*Raymond M. Tierney, Jr.*, argued the cause for *amicus curiae* G.D. Searle & Co. (*Shanley & Fisher*, attorneys; *Raymond M. Tierney, Jr.* and *Susan M. Sharko*, on the brief).

*Walter R. Cohn* submitted a brief on behalf of *amicus curiae* Walter Cohn and Susan Cohn (*Walter R. Cohn,* attorney; *Thomas E. Cohn,* on the brief).

*George J. Botcheos* submitted a brief on behalf of *amicus curiae* Kelsey-Hayes Company (*Laskin & Botcheos,* attorneys; *Lowell A. Reed, Jr.* and *Patricia A. Mattern,* members of the Pennsylvania bar, of counsel).

*William H. Sheil* submitted a brief on behalf of *amicus curiae* Association of Trial Lawyers of America, New Jersey affiliate (*Kronisch & Schkeeper,* attorneys).

*J. Llewellyn Mathews* submitted a brief on behalf of *amicus curiae* Roy Allen Hopkins (*Apell and Mathews,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

In *Coons v. American Honda Motor Co.,* 94 *N.J.* 307 (1983) (*Coons I*), this Court addressed the constitutionality of *N.J.S.A.* 2A:14–22 in the face of an attack under the commerce clause, *U.S. Const.* art. 1, § 8, cl. 3. That statute tolls the running of the statute of limitations in actions against foreign corporations not represented in this state. We ruled that in order to achieve representation under the tolling statute, a corporation not organized in New Jersey and not represented in this state by any person upon whom process may be served must obtain a certificate to do business in New Jersey, pursuant to *N.J.S.A.* 14A:13–4, and thereby submit to the jurisdiction of the forum. 94 *N.J.* at 309. We further held that to require an unrepresented foreign corporation to satisfy that provision before it could gain the benefit of the statute of limitations imposed on such a corporation so impermissible a burden as to amount to a violation of the commerce clause. *Id.* Finally, we stated that our decision was to be given retrospective effect, "consistent with the general rule applied in civil cases that a new ruling shall apply to all matters that have not reached final judgment." 94 *N.J.* at 319 (citing *Fox v. Snow,* 6 *N.J.* 12, 14 (1950)).

Following our decision in *Coons I,* plaintiff filed a petition for rehearing on all the issues that had been determined in that appeal. We directed defendant to respond solely on the question of retroactivity, and invited other counsel to address the same issue. The positions staked out in the supplemental briefs found plaintiff, supported by *amici curiae* Walter and Susan Cohn, Roy Hopkins, Karl Asch, P.A., and ATLA–NJ (The Association of Trial Lawyers of America, New Jersey Affiliate), arguing that our ruling should be prospective in application, a position shared by the Attorney General as intervenor-respondent. Defendant, who contends that *Coons I* should be applied retroactively, is joined by *amici curiae* G.D. Searle & Co., Kelsey-Hayes Company, and Brinco Mining Limited.[1]

We granted the petition for rehearing, 95 *N.J.* 234 (January 3, 1984), limited to the retroactivity issue. We now hold as a matter of state law that *Coons I* is to be applied prospectively only, from the date of that decision, August 3, 1983.

I

In order that the issue may be set forth in the proper context, we advert to the significant facts and procedural history, borrowing at the outset from our recitation in *Coons I, supra,* 94 *N.J.* at 309.

> Plaintiff commenced this suit in 1978 against defendant Honda Motor Co., Ltd. (Honda) and its wholly-owned American distributor, American Honda Motor Co., Inc. (American Honda). The action seeks damages for personal injuries and consequential losses occasioned by an accident on October 30, 1974, when plaintiff was thrown from a motorcycle manufactured by Honda and distributed by American Honda. At all relevant times American Honda was a California corporation that maintained facilities in New Jersey. In contrast, Honda is a Japanese corporation that has never been authorized to do business

---

[1]The various *amici* are interested in the outcome of this appeal as it affects other litigation, including many asbestos exposure cases, to which they are party or in which they represent parties. *Amicus* ATLA–NJ expresses a concern "for the numerous people who are or will * * * become directly affected by the ultimate decision in this case * * *."

in this or any other state and carries on no activities here or elsewhere in the United States.

Because plaintiff had started suit four years after the accident, both Honda and American Honda raised as a defense the two-year statute of limitations for personal injury actions, *N.J.S.A.* 2A:14–2, and moved for summary judgment. The trial court granted American Honda's motion but denied that of Honda, ruling that the two-year statute of limitations had been tolled by *N.J.S.A.* 2A:14–22 because Honda was a foreign corporation that was not "represented" in New Jersey by a person upon whom process could be served. In addition, the trial court held that there were sufficient bases for the exercise of *in personam* jurisdiction against Honda and that the tolling statute did not violate the equal protection clause of the federal Constitution.

The Appellate Division affirmed the judgment of the trial court. *Coons v. Honda Motor Co., Ltd., of Japan,* 176 *N.J.Super.* 575 (1980). After this Court denied cross-motions for leave to appeal, the parties sought review by the Supreme Court, which consented to hear only Honda's appeal. That Court vacated the judgment below and remanded to the Appellate Division. *Honda Motor Co., Ltd. v. Coons,* 455 *U.S.* 996, 102 *S.Ct.* 1625, 71 *L.Ed.*2d 857 (1982). Thereafter we certified the cause on our own motion. *R.* 2:12–1.

[*Id.,* at 309–11 (footnote omitted).]

The Supreme Court's remand was designed to afford the state court the opportunity to reconsider its earlier determination in light of *G.D. Searle & Co. v. Cohn,* 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250 (1982). In *Searle,* Susan and Walter Cohn sought damages allegedly caused by Enovid, an oral contraceptive manufactured by Searle, a Delaware corporation not authorized to do business in New Jersey, with its principal place of business in Illinois. Upon plaintiffs' filing suit, more than ten years after the injury, in the Superior Court of New Jersey, later removed to the District Court, Searle set up as a defense the two-year statute of limitations. Judge Meanor found that the tolling provision relied on by the Cohns violated the equal protection clause. *Cohn v. G.D. Searle & Co.,* 447 *F.Supp.* 903, 912 (D.N.J.1978).

Issues substantially identical to those raised in *Searle* surfaced some months later in *Hopkins v. Kelsey-Hayes, Inc.,* 463 *F.Supp.* 539 (D.N.J.1978). In that case District Court Judge Brotman expressly rejected the reasoning of Judge Meanor in *Searle* and found that *N.J.S.A.* 2A:14–22 withstood constitutional scrutiny under the equal protection clause. *Id.* at 542.

Prior to a decision in the consolidated appeal of *Hopkins* and *Searle* in the United States Court of Appeals for the Third Circuit, *Hopkins v. Kelsey-Hayes, Inc.*, 628 *F.*2d 801 (1980), this Court decided *Velmohos v. Maren Eng'g Corp.*, 83 *N.J.* 282 (1980), in which we upheld the tolling provision in the face of equal protection and due process challenges. The Third Circuit then adopted the *Velmohos* rationale and rejected defendants' constitutional attacks, 628 *F.*2d at 811–12.

Both Searle and Kelsey-Hayes sought *certiorari* in the United States Supreme Court, which granted the petition of Searle, filed one day earlier than that of Kelsey-Hayes. The Court held that *N.J.S.A.* 2A:14–22 withstood constitutional scrutiny arising under equal protection and due process of law. Justice Blackmun, writing for the majority, did not, however, decide the issue raised by Searle's commerce clause argument. Because that issue was "clouded by an ambiguity in state law", 455 *U.S.* at 413, 102 *S.Ct.* at 1144, 71 *L.Ed.*2d at 259, the Court instead remanded the case to the Third Circuit, along with *Kelsey-Hayes* after vacating the judgment in that case. 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1981) (mem.). In a single decision the Third Circuit remanded both *Searle* and *Kelsey-Hayes* to the District Court for resolution of the commerce clause question. *Hopkins v. Kelsey-Hayes, Inc.*, 677 *F.*2d 301, 302 (1982). When the Supreme Court remanded *Coons* to the state court for determination of the commerce clause issue in light of *Searle*, the District Court adjourned its consideration of the same question pending a binding interpretation on a question of state law, namely, the requirement of "representation" in our tolling statute, *N.J.S.A.* 2A:14–22. There followed our decision in *Coons I.*

## II

As long ago as 1940 Chief Justice Charles Evans Hughes lamented that questions of retroactivity had for years been considered "among the most difficult" problems that engage

the attention of the courts, both state and federal. See *Chicot County Drainage Dist. v. Baxter State Bank*, 308 *U.S.* 371, 374, 60 *S.Ct.* 317, 319, 84 *L.Ed.* 329, 333. That the passage of time and a maturing of retroactivity law have not rendered those issues any the less vexatious is borne out by our experience in this case, in which after earnest reflection, aided by full briefing and argument, we now view as ill-considered our earlier statement (made without the benefit of an adversary hearing directed to the point) that gave *Coons I* retrospective effect. We are brought to that conclusion by application of principles drawn from our own state court decisions as well as from United States Supreme Court cases.

There are four common approaches to retroactivity that have emerged from our case law. A court may:

(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted.

[*State v. Burstein*, 85 *N.J.* 394, 402–03 (citing *State v. Nash*, 64 *N.J.* 464, 468–70 (1974)).]

Which of these approaches is taken depends largely on "the court's view of what is just and consonant with public policy in the particular situation presented." *State v. Nash*, 64 *N.J.* 464, 469 (1974). Most frequently "a weighing of the various policies involved [has] called for retrospectivity", *Darrow v. Hanover Twp.*, 58 *N.J.* 410, 413–14 (1971). Consequently, retrospectivity is acknowledged to be the "traditional" rule, *see, e.g., Mirza v. Filmore Corp.*, 92 *N.J.* 390, 396 (1983); hence our reference in *Coons I* to the "general rule" of retrospectivity as adverted to in *Fox v. Snow*, 6 *N.J.* 12, 14 (1950). 94 *N.J.* at 319.

However, as suggested by *Nash, supra,* 64 *N.J.* at 469, sound policy reasons may persuade a court to accord a judicial decision prospective application. Under the rubric of *Nash,* fol-

lowed in numerous cases since then, "sound policy grounds" may justify limiting the retroactive effect of overruling precedent. See *id.* at 471. They are (1) justifiable reliance by the parties and the community as a whole on prior decisions, (2) a determination that the purpose of the new rule will not be advanced by retroactive application, and (3) a potentially adverse effect retrospectivity may have on the administration of justice. *Mirza v. Filmore Corp., supra,* 92 *N.J.* at 397; *see, e.g., State v. Catania,* 85 *N.J.* 418, 447 (1981); *State v. Burstein, supra,* 85 *N.J.* at 406; *State v. Carpentieri,* 82 *N.J.* 546, 549 (1980).

Although more than one retroactivity analysis is available—in fact, as one scholar has recently pointed out, "there are several, with the precise number unclear and possibly changing", Carr, "Retroactivity: A Study in Supreme Court Doctrine 'As Applied'," 61 *N.C.L.Rev.* 745, 761 (1983)—it appears that New Jersey retroactivity law has been inspired by the same considerations that underlie retroactivity theory as developed by the Supreme Court. See *State v. Gervasio,* 94 *N.J.* 23 (1983); *Salorio v. Glaser,* 93 *N.J.* 447 (1983). On the specific issue before us—whether a civil statute's invalidity is to be applied prospectively or retroactively—the Supreme Court has developed an equitable balancing test, perhaps best typified by *Chevron Oil Co. v. Huson,* 404 *U.S.* 97, 92 *S.Ct.* 349, 30 *L.Ed.* 2d 296 (1971), and *Lemon v. Kurtzman,* 411 *U.S.* 192, 93 *S.Ct.* 1463, 36 *L.Ed.*2d 151 (1973) (*Lemon II*).

*Chevron* involved a claim for personal injuries sustained while plaintiff was working on defendant's drilling rig located on the Outer Continental Shelf off the Gulf Coast of Louisiana. The suit was filed more than two years after plaintiff's accident. Louisiana had a one year statute of limitations governing personal injury suits. Originally, defendant did not raise a statute of limitations defense because the parties assumed, on the basis of a long line of federal decisions, that admiralty law—including the doctrine of laches—applied to the case. During discovery, however, the Supreme Court announced its

decision in *Rodrigue v. Aetna Casualty & Sur. Co.*, 395 *U.S.* 352, 89 *S.Ct.* 1835, 23 *L.Ed.*2d 360 (1969), that state law, including state statutes of limitations, rather than admiralty law applied to personal injury actions brought under the Outer Continental Shelf Lands Act, relating to fixed structures on the Outer Continental Shelf. The District Court in *Chevron*, relying on *Rodrigue*, applied the Louisiana one-year limitations period and dismissed the case. The Circuit Court reversed and remanded for trial. In affirming that result the Supreme Court ruled that *Rodrigue* should be applied prospectively. The Court articulated three factors that influenced its decision:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * ˆ * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

[404 *U.S.* at 106–07, 92 *S.Ct.* at 355, 30 *L.Ed.*2d at 306 (citations omitted).]

Justice Stewart observed that inasmuch as *Rodrigue* not only was a case of first impression but also overruled prior lower court decisions that were binding, it was to be expected that plaintiff would rely on the law as it was "[w]hen [he] was injured, for the next two years until he instituted his lawsuit, and for the ensuing year of pretrial proceedings * * *." *Id.* at 107, 92 *S.Ct.* at 355, 30 *L.Ed.*2d at 306. The Court pointed to the substantial inequitable results that would be produced were *Rodrigue* given retroactive effect, since plaintiff stood to be barred from further relief because of a sudden change in the applicable statute of limitations. *Id.*

In *Lemon v. Kurtzman*, 403 *U.S.* 602, 91 *S.Ct.* 2105, 29 *L.Ed.* 2d 745 (1971) (*Lemon I*), the Supreme Court invalidated a Pennsylvania statutory program to reimburse nonpublic sectarian schools for designated secular educational service. In *Lem-*

*on II, supra,* 411 *U.S.* 192, 93 *S.Ct.* 1463, 36 *L.Ed.*2d 151, the Court held that *Lemon I* should be accorded prospective effect. Chief Justice Burger, repeating *Chevron's* comment that the Supreme Court had come to recognize the doctrine of non-retro-activity outside the criminal area many times, in both constitutional and non-constitutional cases, 411 *U.S.* at 197, 93 *S.Ct.* at 1467, 36 *L.Ed.*2d at 159–60, emphasized that reliance interests weigh heavily in the shaping of appropriate equitable relief. *Id.* at 203, 93 *S.Ct.* at 1471, 36 *L.Éd.*2d at 163. Particularly pertinent to today's inquiry is the Court's observation that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and shaping their conduct." *Id.* at 199, 93 *S.Ct.* at 1468, 36 *L.Ed.*2d at 160.

That *Chevron's* underscoring of reliance continues as a significant feature of retroactivity analysis at the federal level is clear from *Wachovia Bank & Trust v. National Student Mktg.,* 650 *F.*2d 342, 343 (D.C.Cir.1980). The result in that case, which involved a suit under federal securities law, turned on a determination of which of two statutes of limitations applied. Although the court had recently applied the shorter of the two, at the time the cause of action arose and plaintiff filed suit, the longer limitations period had been in use. Finding *Chevron's* reliance factor to be "the most fundamental," 650 *F.* 2d at 347, the court concluded that plaintiff was entitled to rely on the law as it was when suit was started. *Id.* at 348.

The development of New Jersey's retroactivity law has proceeded on a track roughly paralleling that represented by the cases discussed above. Indeed, one might fairly claim that *Oxford Consumer Discount Co. v. Stefanelli,* 104 *N.J.Super.* 512 (App.Div.1969), modified, 55 *N.J.* 489, appeal dismissed, 400 *U.S.* 923, 91 *S.Ct.* 183, 27 *L.Ed.*2d 182 (1970), anticipated the *Chevron* and *Lemon II* analysis, at least to the extent of its heavy emphasis on the element of reliance.

There is no question but that appellate courts in this State and elsewhere have long regarded themselves as empowered and justified in confining the effect of a decision of first impression or of novel or unexpected impact to

prospective application if considerations of fairness and justice, related to reasonable surprise and prejudice to those affected, seemed to call for such treatment. [104 *N.J.Super.* at 520.]

Our continued regard for the reliance factor is demonstrated by last term's decision in *Salorio v. Glaser, supra,* 93 *N.J.* 447, in which a unanimous Court declared the Emergency Transportation Tax Act, *N.J.S.A.* 54:8A–1 to –57, to be unconstitutional. In recognition, however, of the state's fiscal problem and of its reliance on the taxing statute as a significant revenue-raising law, we applied our ruling prospectively to allow the taxing authorities to collect the tax until January 1, 1984. Resorting to authority in support of the decision to invalidate statutory law, Justice Schreiber wove together the equitable considerations espoused in *Lemon II, supra,* 411 *U.S.* 192, 93 *S.Ct.* 1463, 36 *L.Ed.*2d 151, and *Oxford Consumer Discount, supra,* 104 *N.J.Super.* 512, to find that fairness and reliance warranted prospective application. 93 *N.J.* at 464–65.

For other cases involving prospective application of decisions, see *New Jersey Bd. of Higher Educ. v. Shelton College,* 90 *N.J.* 470, 490 (1982) (enjoining unlicensed college from granting degrees but allowing award of credits and degrees to junior and senior students in recognition of students' pursuit of educational goals in "good faith" reliance on credibility of institution); *Passaic v. Local Fin. Bd.,* 88 *N.J.* 293, 303 (1982) (despite municipality's possible lack of good faith in adopting emergency appropriation request in violation of *N.J.S.A.* 40A:4–46, Court would not review appropriation and financing inasmuch as expenditures in reliance thereon could not be undone); *Jersey Shore v. Estate of Baum,* 84 *N.J.* 137, 152 (1980) (common-law principle of protecting wife from liability for husband's necessary expenses, without according similar protection to husband, invalidated on equal protection grounds; holding applied prospectively only to debts incurred after date of decision because of "primary factor" of "[r]eliance on the prior law"); *Barone v. Harra,* 77 *N.J.* 276, 281 (1978) (in view of reliance on prior law,

Court's holding of compensability under workers' compensation law for injuries sustained during lunch period applied prospectively); *Merenoff v. Merenoff,* 76 *N.J.* 535, 560 (1978) (abolition of interspousal tort immunity in personal injury actions applied prospectively); *Tomarchino v. Township of Greenwich,* 75 *N.J.* 62, 78 (1977) (invalidation of proof of dependency requirement in workers' compensation statute applied prospectively); *Mercer Council # 4 v. Alloway,* 119 *N.J. Super.* 94, 101 (despite invalidation of Civil Service Commission rule, Commission's "substantial * * * reliance to date" on rule justified declaration that all prior actions as well as actions to be taken within 45 days of court's opinion would be valid), aff'd, 61 *N.J.* 516 (1972); *Darrow v. Hanover Twp., supra,* 58 *N.J.* at 420 (abrogation of interspousal tort immunity in automobile negligence actions applied prospectively).

## III

In applying to this case the principles discussed in the preceding section, we are mindful of two admonitions in *Salorio v. Glaser, supra,* 93 *N.J.* 447. The first is perhaps obvious: that the ruling, the retrospective-prospective application of which is at issue, must be "the equivalent of a new rule of law." *Id.* at 464–65; *see State v. Burstein, supra,* 85 *N.J.* at 403 ("As the very term implies, retroactivity can arise only where there has been a departure from existing law."). The second may be more subtle but is of equal significance:

> It is important to recognize that we are acting within the framework of appropriate equitable relief with respect to an unconstitutional * * * statute and not with regard to the retrospective effect of a new rule of criminal procedure, *United States v. Johnson,* 457 *U.S.* 537, 102 *S.Ct.* 2579, 73 *L.Ed.*2d 202 (1982); or a substantive constitutional principle, *United States v. United States Coin & Currency,* 401 *U.S.* 715, 91 *S.Ct.* 1041, 28 *L.Ed.*2d 434 (1971); or a rule of judge-made law applicable to civil proceedings, *Mirza v. Filmore Corp.,* 92 *N.J.* 390 (1983); *Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402 (1983). Factors that may be relevant in the criminal field, such as integrity of the judicial process, impairment of the basic purpose of the jury to determine the truth, or in the common law in civil matters in which other policy considerations are involved, may or may not be applicable here. [93 *N.J.* at 463–64.]

The concerns expressed in this passage are related to what factors we select and what approach we take in deciding the issue before us. Defendant and the corporate *amici* argue that because our earlier ruling did not represent a "clear break with the past"—a prerequisite to prospectivity under *United States v. Johnson,* 457 *U.S.* 537, 102 *S.Ct.* 2579, 73 *L.Ed.*2d 202 (1982)—we must give retroactive effect to *Coons I.* We do not agree.

*Johnson* held that, subject to limited exceptions, "a decision of [the Supreme] Court construing the Fourth Amendment [was] to be applied to all convictions that were not yet final at the time the decision was rendered." 457 *U.S.* at 562, 102 *S.Ct.* at 2594, 73 *L.Ed.*2d at 222. A fourth-amendment decision was to be applied retroactively unless it represented "a clear break with the past," as to which the Court said:

> Such a break has been recognized only when a decision (1) explicitly overrules a past precedent of this Court, or (2) disapproves a practice this Court arguably has sanctioned in prior cases, or (3) overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. [*Id.* at 551, 102 *S.Ct.* at 2588, 73 *L.Ed.*2d at 215 (citations omitted).]

Because, in the case before us, the law concerning the effect of the tolling statute on unlicensed foreign corporations was, at best, uncertain at the time plaintiff and the claimants-*amici* started suit, defendant argues that *Coons I* does not represent a "clear break" in any of the senses contemplated by *Johnson.*

Although this Court has adopted the *Johnson* "clear break" test in the context of a fourth amendment retroactivity issue, see *State v. Gervasio, supra,* 94 *N.J.* 23, we have not looked to strict "clear-break" analysis in the civil context, in which the emphasis has been on considerations of fundamental fairness and justice. *See, e.g., Salorio v. Glaser, supra,* 93 *N.J.* 447. Indeed, the final point of *Johnson* itself is that "all questions of civil retroactivity continue to be governed by the standard enunciated in *Chevron* \* \* \* ". 457 *U.S.* at 562, 102 *S.Ct.* at 2594, 73 *L.Ed.*2d at 222–23. And *Chevron,* as we have seen, *supra* at 427 tells us that for a decision to be applied non-ret-

roactively, it is sufficient that it establish a new principle of law, "either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed." See *Johnson, supra,* 457 *U.S.* at 550 n. 12, 102 *S.Ct.* at 2587 n. 12, 73 *L.Ed.*2d at 214 n. 12. *Chevron* does not use "clear-break" language. *See also Solem v. Stumes,* —— *U.S.* ——, 104 *S.Ct.* 1338, 79 *L.Ed.*2d 579 (1984) (affording prospective application to *Edwards v. Arizona,* 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981), which established *per se* rule that once suspect has invoked right to counsel, any subsequent initiation of conversation by one other than suspect violates that right; held, police could reasonably have relied on pre-*Edwards* law, which inquired into facts of each case, even though state of that law was unsettled; despite absence of "clear break," *Edwards* did establish new rule).

It is clear that *Coons I* satisfied the *Chevron-Salorio* formulation of how the requirement of establishing a new principle of law may be met. We must look to the law as it was at the time plaintiff contemplated starting suit, namely, 1978. *See Wachovia Bank & Trust v. National Student Mktg., supra,* 650 *F.*2d at 347. In 1978 *N.J.S.A.* 2A:14–22 was in full bloom. It had been on the books since 1949, see *Coons I, supra,* 94 *N.J.* at 313, and a tolling provision in some form had been a fixture of our law for over a century and a half, its origins being traceable to 1820, see *Lemke v. Bailey,* 41 *N.J.* 295, 298 (1963). After *Coons I,* however, there was effectively no tolling provision for foreign, unrepresented corporations.

Until 1980, in *Velmohos v. Maren Eng'g Corp., supra,* 83 *N.J.* 282, this Court had not addressed the effect of *N.J.S.A.* 2A:14–22 on corporate defendants, having specifically declined to do so in *Lemke v. Bailey, supra,* 41 *N.J.* at 301. And although, as pointed out in both *Lemke, id.,* and *Velmohos, supra,* 83 *N.J.* at 286, that issue had yielded contradictory results in trial court decisions, *compare Ferraro v. Ferro Trucking Co., Inc.,* 72 *N.J.Super.* 519 (Law Div.1962), *with*

*Whalen v. Young,* 28 *N.J.Super.* 543 (Law Div.1953), no appellate court anywhere had even hinted at a commerce clause problem until the Supreme Court's decision in *G.D. Searle & Co. v. Cohn, supra,* 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250. Up to that point the only reported mention of commerce clause implications was tucked away in Judge Meanor's footnote in his *Searle* opinion, 447 *F.Supp.* at 911 n. 17. Hence, the declaration of *Coons I* was hardly foreshadowed; and although the case did not literally alter precedent because there was none on the *holding* of the case, it amounted to a "statement" in a matter of first impression—and thus "new law."

> The overruling of prior judicial construction of a statute is generally not given retroactive effect, even as legislative change itself normally applies only prospectively. Although we are not literally altering precedent, the principle in this matter of first impression appears to us to be indistinguishable in view of that which appears almost incontestably to have been a not wholly unreasonable reliance on a contrary doctrine. [*Turner v. Aldens, Inc.,* 179 *N.J.Super.* 596, 605 (App.Div.1981) (citation omitted).]

Turning to the critically important factor of reliance, we focus at the outset on what it is that litigants "may have relied" on in 1978—a long-standing statute that announces that as to foreign, unrepresented corporations, no action need be taken. The effect of the statute is to give assurance that causes of action against foreign, unrepresented corporations will be preserved. In a sense its underlying subject is non-action. To be sure, it would be most difficult, if not impossible, to forecast the number of claimants who might be affected by a holding that *Coons I* should be applied retroactively or, as the Attorney General points out, to measure "the extent and nature of the prejudice to be suffered by those potential plaintiffs who justifiably relied on the validity of the tolling statute."

Despite those difficulties, we conclude that given the nature of this statute, we are justified in presuming that because of the tolling feature, many suits may not have been brought against unrepresented foreign corporations. The foreign corporations did not take any action to avoid whatever vulnerability the enactment created; they did not register in New Jersey.

The history of non-action by both those corporations and potential plaintiffs satisfies us that participants in the events before us ordered their affairs in accordance with the tolling statute.

Moreover, this conclusion has the virtue of practicability: we cannot construct a workable rule by questioning, in each case, whether the particular plaintiff has successfully demonstrated actual reliance. Some level of generality is required. The result we achieve satisfies that need while at the same time honoring the equitable considerations that must inform our decision.

Finally, following *Chevron, supra*, 404 *U.S.* at 106–07, 92 *S.Ct.* at 355, 30 *L.Ed.*2d at 305–06, we look to the purpose of the rule in *Coons I*. In its starkest terms, that determination had as its purpose the outlawing of so much of the tolling statute as violates the commerce clause. Defendant contends that not to apply the ruling retroactively would be to countenance unconstitutionality. But the argument overlooks the balancing of interests and impact, called for by our commitment to equitable principles. Those concerns are addressed above—the reliance of plaintiff and those similarly situated, and the absence of any showing that in fact defendant and corporate *amici* suffered a burden borne of a compulsion to register in New Jersey to permit recourse to the statute of limitations. On balance we are satisfied that the purpose of the prior ruling is fulfilled by excluding from the scope of the *Coons I* ruling only those actions already commenced as of August 3, 1983.

That leaves for determination only the question of whether Honda, as the successful litigant in *Coons I*, or any of the corporate *amici* as champions of the cause, should be given the benefit of the ruling in *Coons I*. We conclude not. Prospectivity is to be accorded "across the board." Whereas ordinarily the fruits of the struggle are awarded the successful litigant, and likewise to one—here Searle and Kelsey-Hayes—with whom the prevailing theory originated or who, like Brinco, has with great tenacity and persistence espoused the cause—we

perceive no injustice in limiting the operative time of *Coons I* to the date of that decision, August 3, 1983. Defendant and *amici* are institutional litigants. They are of a class that will in the future frequently have resort to the statute of limitations, unimpeded by so much of *N.J.S.A.* 2A:14–22 as deprived them of that benefit. In addition, the hiatus effected by our conclusion in this regard affords the Legislature an opportunity to address any public policy concerns that are implicated by *Coons I.*

Our prior judgment in *Coons I,* under the terms of which the cause was remanded to the Law Division for entry of judgment for defendant Honda, is modified. *Coons I* is to be made effective as of August 3, 1983—that is, the statute of limitations as to foreign, unrepresented corporations commences to run as of that date. The cause is remanded to the Law Division for further proceedings consistent with this opinion.

GARIBALDI, J., dissenting.

On August 3, 1983 in *Coons v. American Honda Motor Co.,* 94 *N.J.* 307 (1983) (*Coons I*), we held that *N.J.S.A.* 2A:14–22 imposes an unconstitutional burden on interstate commerce in violation of the commerce clause, *U.S. Const.* art. 1, § 8, cl. 3. We further stated that this decision "should be given retrospective effect, consistent with the general rule applied in civil cases that a new ruling shall apply to all matters that have not reached final judgment." *Id.* at 319. Today, less than 8 months later, the majority reverses our decision in *Coons I* with respect to retroactivity and holds that the decision in *Coons I* should be applied prospectively to all parties from the date of that decision August 3, 1983. We disagree.

Justices Schreiber and Pollock would apply our decision in *Coons I* retroactively to all parties presently before the Court including *amici:* G.D. Searle & Co., Kelsey-Hayes Co. and Brinco Mining Limited, but would apply the decision prospectively as to everyone else. I agree with my dissenting breth-

ren, but would go further and accord our *Coons I* decision retroactive effect "across the board."

I

Irrespective of the general retroactivity of the *Coons I* decision, there should be no question that those responsible for effecting the change in law should benefit by their efforts. It has long been the position of this Court that "fundamental fairness" compels that "champions of the cause" should be rewarded for their effort and expense in challenging existing law. We need private attorneys to push forward the frontiers of the law, but we will not have them if they stand to gain nothing through their efforts.

As we have held in *Goldberg v. Traver*, 52 *N.J.* 344, 347 (1968), "[u]nless the immediate litigant can hope to gain, there would be no incentive to challenge existing practices or prior holdings which, in the public interest ought to be reviewed." And as Chief Justice Weintraub observed in *Willis v. Department of Cons. & Econ. Dev.*, 55 *N.J.* 534, 541 (1970):

> As to the plaintiffs in this case, the decision should be applied, and this for the practical reason that case law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left with only that distinction.

This Court set forth similar policy reasons when we held that our decisions would be prospectively applied, except as to the litigants before the Court, in the following cases: *Cogliati v. Ecco High Frequency Corp.*, 92 *N.J.* 402, 417 (1983) (decisions extending responsibility of predecessor in title for maintenance of public sidewalks, applied prospectively except as to parties); *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63, 82–83 (1982) (overruling of prior decision in *Point Pleasant Beach Teachers' Ass'n v. Callam*, 173 *N.J.Super.* 11, certif. den., 84 *N.J.* 469 (1980), applied prospectively except as to parties before court); *Pascucci v. Vagott*, 71 *N.J.* 40, 50–51 (1976) (setting aside of classification standards under welfare statute applied prospectively except as to litigants); and *Darrow v. Hanover Town-*

*ship*, 58 *N.J.* 410, 420 (1971) (abrogation of doctrine of interspousal immunity in automobile negligence cases applied prospectively except as to litigants).

Recently, we held that as a matter of fundamental fairness a new rule of strict liability in a products liability case should be extended to all plaintiffs similarly situated. *Ramirez v. Amsted Industries*, 86 *N.J.* 332 (1981). In *Ramirez* we said:

> Therefore, we apply the new rule to the present case and its companion, *Nieves v. Bruno-Sherman Corp. & Harris Corp.*, 86 *N.J.* 361. Moreover, we conclude that on balance *and as a matter of fundamental fairness*, the benefit of today's rule should be extended to other similarly situated plaintiffs with products liability suits against successor manufacturers affected by this rule, which suits were in progress as of November 15, 1979, the date of the Appellate Division decision. There is a *basic justice* in recognizing that persons who have exercised the initiative to challenge the existing law should be accorded relief if their claims—not yet resolved when the new rule of law is announced—are ultimately vindicated. (emphasis added) [*Id.*, [86 *N.J.*] at 357.]

The fundamental principles of basic fairness contemplated by this Court in *Ramirez* are particularly appropriate in the instant case. For years the parties here have waged protracted legal battles over the constitutionality of the tolling statute. Defendant Honda has been fighting this suit for over 5 years. It has been an extraordinarily hard fought battle in both the state and federal courts, as a brief history of the litigation demonstrates. The majority opinion, *ante* at 422–423, sets forth the procedural history of this case. That history reveals: arguments in this state's trial court and Appellate Division; denial of cross-motions for leave to appeal to this Court; vacation of the judgment and remand by the United States Supreme Court; certification by this Court on our own motion; our *Coons I* decision, declaring that the tolling statute unconstitutionally burdens interstate commerce and that our decision should be given retroactive effect; and finally, this case, *Coons II*, a rehearing of the retroactivity issue only. Even the most superficial glance at this procedural history indicates that the road to today's decision has been a tortuous one.

The *amici* likewise have engaged in an extraordinarily protracted and tenacious pursuit of this issue through the Federal

District Court to the United States Court of Appeals and finally to the United States Supreme Court. As the majority recognizes, Searle and Kelsey-Hayes are the originators of the prevailing commerce clause theory and Brinco has persistently espoused the cause. *Ante* at 434–435.

Certainly Searle and Kelsey-Hayes have "championed the cause." They have challenged the constitutionality of this statute longer than any other party. But for the Supreme Court decision in *G.D. Searle & Co. v. Cohn*, 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250 (1982) and the subsequent remand of the *Coons* case, the commerce clause issue would not have been decided by this Court at this time.

Brinco likewise long has challenged the tolling statute's constitutionality. It joined the *Searle* case as an *amicus* in the Supreme Court and filed an *amicus* brief devoted exclusively to the commerce clause. After the Supreme Court remanded *Coons* to the Appellate Division in light of its decision in *Searle*, Brinco obtained leave to file an *amicus* brief and to argue before us.

Given the especially long and arduous history of this appeal, there is no valid reason to depart from established judicial principles. Basic justice and principles of fundamental fairness demand that the defendant and *amici* in this case have the *Coons I* decision applied retroactively to them. When a statute's unfair and discriminatory features render it offensive to the supreme law of our land, it is just to resolve the matter so that the challenging litigants be spared further constitutional deprivation. Only in this fashion may the unconstitutional burden which has heretofore been placed upon them be eradicated.

The majority's excuse for not applying these well-recognized standards to the defendant and *amici* is that they are institutional litigants and hence will suffer no injustice. Whatever merit attends that argument is insufficient to carry the day. All litigants should be treated equally before the courts. More-

over, defendant and *amici* certainly will suffer an injustice if *Coons I* is not applied to them retrospectively. Under today's decision not only the present plaintiffs in this action and in cases in which *amici* are involved will have an unconstitutional cause of action, but until August 3, 1985 (two years from our decision in *Coons I*) plaintiffs who have sat on their rights will be able to institute actions against these parties and impose additional unconstitutional burdens upon them.

## II

While my fellow dissenters would limit the retroactive application of *Coons I* to the parties before the Court today, I would go further; I would hold that *Coons I* should be given complete retroactive effect. This Court has generally adhered to the principle that "the presumption is in favor of retrospectivity, and that presumption can be overcome only by a clear demonstration in a particular case that there are sound policy reasons for according a judicial decision prospective application only." *Cogliati v. Ecco High Frequency Corp., supra,* 181 *N.J.Super.* at 583. In my opinion, plaintiffs have failed to meet their burden of demonstrating good reasons for prospective application in this case. *See Mirza v. Filmore Corp.,* 92 *N.J.* 390, 396–97 (1983); *Busik v. Levine,* 63 *N.J.* 351, 360–61, app. dism. 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973); *Darrow v. Hanover Township,* 58 *N.J.* 410, 413 (1971); *Fox v. Snow,* 6 *N.J.* 12, 14 (1950); *Ross v. Board of Chosen Freeholders of Hudson Cty.,* 90 *N.J.L.* 522 (E. & A. 1917); *Goncalvez v. Patuto,* 188 *N.J.Super.* 620, 626 (App.Div.1983); *Cogliati v. Ecco High Frequency Corp., supra,* 181 *N.J.Super.* at 582.

Our law of retroactivity is based on the same considerations that underlie retroactivity theory of the Supreme Court. In civil actions, we have recognized standards similar to the tests set forth in *Chevron Oil Co. v. Huson,* 404 *U.S.* 97, 92 *S.Ct.* 349, 30 *L.Ed.*2d 296 (1971). In that case the Supreme Court looked to three factors to determine the retroactivity question:

(1) whether the decision establishes a "new principle of law;" (2) whether retroactive operation of the decision would further or retard the purpose of the new rule; and (3) whether retroactive application would work an injustice upon those who had reasonably relied upon the old rule. 394 *U.S.* at 106–107, 92 *S.Ct.* at 355, 30 L.Ed.2d at 306; *see Mirza v. Filmore Corp.*, 92 *N.J.* 390, 397 (1983) (applying similar test when overruling prior judicial precedent in civil action); *see also State v. Burstein*, 85 *N.J.* 394, 406 (1981) (applying similar test in the context of changing interpretation of criminal statute).

The threshold issue in any retroactivity decision is whether or not a new rule of law or judicial principle has been announced. In defining the threshold question in the court context, we have consistently followed the liberal "new rule of law" standard set forth in *Chevron*. *See Salorio v. Glaser*, 93 *N.J.* 447, 465 (1983).

Although the tolling statute had been criticized and court decisions challenged its constitutionality, my review of the statute's history and the relevant cases leads me, as it did the majority, to conclude that our decision in *Coons I* amounted to a statement of first impression. Therefore, applying the first *Chevron* test, I agree with the majority that the decision in *Coons I* established a new rule of law.

My disagreement with the majority stems from my belief that it is improperly applying the second and third tests of *Chevron*. Turning to an examination of the second *Chevron* test, the prospective application of *Coons I* clearly frustrates the purpose of that decision. In applying *Coons I* prospectively, the majority ignores that its purpose was to strike down an unconstitutional statute. Today the majority countenances the very unconstitutionality that we sought to abrogate in *Coons I*. When the very law that prejudices the litigant cannot withstand a constitutional challenge, only extraordinarily strong policy reasons (as present in *Salorio* ) justify limiting the new rule to prospective application.

The majority primarily bases its holding upon its analysis of the third *Chevron* factor and erroneously holds that retroactive application would be unjust to the plaintiff in this case because of his reliance upon the unconstitutional statute. An examination of the record discloses, however, that the parties in this case did not place any reliance whatsoever upon the tolling statute. Plaintiff Coons brought suit against Honda as soon as he realized that he had a cause of action; *Amicus* Cohn did not file suit immediately because he believed that the theory of causation was too tenuous. Finally, Roy Hopkins asserted that he was unaware that he might have a cause of action against Kelsey-Hayes, Inc., until after the statute of limitations had run.

Today the majority holds that actual reliance need not be shown, but that the potential for reliance is sufficient to trigger a prospective application of the rule. *Ante* at 434. I disgree. In the past we have required a showing of actual reliance before limiting a new decision to purely prospective effect. *Wangler v. Harvey*, 41 *N.J.* 277, 286 (1963) (no evidence of actual reliance by defendant); *Arrow Builders Supply Corp. v. Hudson Terrace Apts.*, 16 *N.J.* 47, 50 (1954) (record contained nothing to suggest party actually relied upon old rule). I would require actual reliance or at least a reasonable likelihood of reliance before I would allow this factor to determine whether a decision should be applied retroactively or prospectively.

### III

In conclusion, I still hold to our presumption of retroactivity. The reason for the presumption is that in most instances the advancement of the purpose of the new ruling is best served and the equities are not substantially disserved by applying the ruling to all actions. This general rule is clearly applicable to the present case.

Here the purpose of our ruling was to correct an unconstitutionally discriminatory statute. The Court's decision, to apply that ruling prospectively only, does nothing to advance the

equities of this case since, as we have seen, the parties did not rely on the old rule. The decision, however, does delay the effect of the new rule, and thereby retards its purpose.

I would not give these or other plaintiffs who slept on their rights a windfall action allowing them to sue foreign corporations for another year without any showing that they either knew or relied on our statute. The proper remedy for these plaintiffs is the discovery exception to the statute of limitations. If they cannot succeed under that provision, they should not be allowed to succeed under this one. New Jersey cannot afford to create inconsistent decisions based on this Court's desire to give a certain class of plaintiffs a remedy to which they are not entitled.

Justice SCHREIBER and Justice POLLOCK join in Part I of this opinion.

*For modification*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER and O'HERN—4.

*Dissenting*—Justices SCHREIBER, POLLOCK and GARIBALDI—3.