731 A.2d 564 (1999)
322 N.J. Super. 568
Diane KUHNEL, individually and on behalf of all other Workers' Compensation Lien Payers similarly situated, Plaintiffs-Appellants,
v.
CNA INSURANCE COMPANIES, a Workers' Compensation Lien Payee, Continental Casualty Co., American Casualty Company of Reading, Pennsylvania, National Fire Insurance Company of Hartford, Transcontinental Insurance Company, Transportation Insurance Company, and Valley Forge Insurance Company, Defendants-Respondents.
James Streeper, and Anthony Gaitanos, individually, and on behalf of all other Workers' Compensation Lien Payers similarly situated, Plaintiffs-Appellants/ Cross-Respondents,
v.
Aetna Insurance Company, a New Jersey Workers' Compensation Lien Payee, Defendant-Respondent/ Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1999.
Decided June 30, 1999.
*566 Robert S. Kitchenoff for plaintiffs-appellants in both appeals (Westmoreland, Vesper & Schwartz, and Mr. Kitchenoff (Weinstein Kitchenoff Scarlato & Goldman), attorneys; R.C. Westmoreland and Mr. Kitchenoff, on the briefs).
Richard V. Jones for defendants-respondent CNA Insurance Companies in A-4349-97T3 (Bressler, Amery & Ross, attorneys; Mr. Jones, on the brief).
Kevin T. Coughlin, Morristown, for defendant-respondent/cross-appellant Aetna Casualty and Surety Company in A-4689-97T5 (McElroy, Deutsch & Mulvaney, attorneys; Mr. Coughlin, of counsel and on the brief; Vincent E. Reilly, on the brief).
Before Judges KESTIN, WEFING and CARCHMAN.
*565 The opinion of the court was delivered by CARCHMAN, J.A.D.
Chief Justice Charles Evans Hughes characterized questions of retroactivity "among the most difficult" issues addressed by courts, Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 319, 84 L.Ed. 329, 333 (1940). Our Supreme Court acknowledged that "the passage of time and a maturing of retroactivity law have not rendered those issues any less vexatious." Coons v. American Honda Motor Co., 96 N.J. 419, 424-25, 476 A.2d 763 (1984), cert. denied, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). We now address in the cases before us[1] the retroactivity of a judgment of the Chancery Division declaring that a workers' compensation lien established pursuant to N.J.S.A. 34:15-40 (Section 40) shall not include a respondent's portion of a petitioner's attorney and expert fees, an employer or insurer's expenses for a defense medical examination, *567 or rehabilitative nursing services unless such nursing services "primarily benefitted the employee and were reasonably necessary to the injured employee's recovery." Judge Gibson determined, among the other issues presented, that in the Kuhnel case, the judgment would apply retroactively only to Kuhnel and those members of a class "who have not as of November 6, 1997, reached an agreement incorporated by a writing or release of any workers' compensation lien asserted by [defendant CNA Insurance Companies (CNA) ]." In the Streeper case, the judge concluded that the judgment applies retroactively only to Streeper and those others similarly situated "for whom, as of November 6, 1997,[2] a defendant's lien under N.J.S.A. 34:15-40 was an open question by reason of the lien's not having been resolved by judgment or by an agreement." Except for the judgment for unjust enrichment against defendant in the Streeper case, we affirm and hold that the limited retroactivity of the judgments ordered by Judge Gibson represents an appropriate application of the factors enunciated by the New Jersey Supreme Court in Coons, supra, 96 N.J. at 425, 476 A.2d 763.

I.
We briefly address the facts and procedural history as well as identify the other issues raised on this appeal.

A.
Plaintiff Diane Kuhnel was injured during the course of her employment with Western Medical Services (Western) on September 5, 1990. She commenced a workers' compensation action against Western, and on September 22, 1993, the Division of Workers' Compensation (DWC), entered an order approving the settlement of that action. Kuhnel was awarded temporary disability benefits totaling $14,654 (September 6, 1990, to November 13, 1991). She was also found to be seventy percent totally and permanently disabled and awarded compensation totaling $58,094.65, after the applicable Social Security offset. Kuhnel's attorney was awarded counsel fees in the amount of $14,990, which were assessed $5,995 against Kuhnel and $8,995 against Western. Various other fees and costs were also assessed against both parties.
Kuhnel subsequently commenced a third-party action arising out of the same circumstances, which was settled on September 23, 1994, for $420,000. On November 2, 1994, CNA claimed a total lien of $72,121.69 under Section 40, which included, among other things, the portions of Kuhnel's counsel fees and other fees and costs which were assessed against Western by the compensation court.

B.
Plaintiff James Streeper was injured during the course of his employment with Michael's Limousine, Inc. (Michael's), on October 9, 1989.[3] Streeper commenced a workers' compensation action against Michael's, and defendant Aetna Insurance Company (Aetna) provided Streeper certain benefits pursuant to Michael's workers' compensation insurance. After Streeper obtained a recovery from the tortfeasor in a third-party action, Aetna asserted a Section 40 lien of $25,335.37 for "medical payments" and "indemnity." Within the medical payments portion of the lien, Aetna included charges for a medical examination allegedly for the purpose of the workers' compensation claim, as well as the charges for rehabilitative nursing services.
Plaintiff Anthony Gaitanos was injured during the course of his employment with Caesars Hotel & Casino (Caesar's) on June 14, 1991. Gaitanos subsequently *568 commenced a workers' compensation action against Caesar's as a result of his injury, and Aetna provided Gaitanos with certain benefits pursuant to Caesar's workers' compensation insurance. After Gaitanos obtained a recovery in his third-party action, Aetna asserted a Section 40 lien of $47,962.52 for "medical payments" and "indemnity." Within the total lien, Aetna included approximately $1,325 for medical examinations allegedly undertaken for Aetna for its defense of Gaitanos' workers' compensation claim.

C.
Kuhnel filed a class action complaint on behalf of herself and all other similarly situated workers' compensation lien payers (collectively Kuhnel) against CNA and related companies alleging the following: Count One, violations of Section 40; Count Two, violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20; Count Three, fraudulent and negligent misrepresentation; Count Four, negligence per se; Count Five, breach of insurer's duty of good faith; and Count Six, unjust enrichment. Subsequently, Streeper filed a class action complaint against Aetna and any unknown affiliated workers' compensation insurers (collectively Aetna), alleging the same six counts as Kuhnel as well as a seventh count to reach Aetna's affiliates. In the Kuhnel action, CNA filed an answer and counterclaim, asserting fraud, equitable fraud and unjust enrichment.
After various amendments to the complaints to join additional related parties, CNA and Aetna filed motions to transfer the matters from the Chancery Division to the DWC. Judge Gibson entered an order granting CNA's motion "only as to the issue of whether [CNA's] portion of [Kuhnel's counsel] fees and [CNA's] portion of [Kuhnel's] expert fee [are] properly chargeable as a portion of the lien pursuant to N.J.S.A. 34:15-40 against the third-party recovery in favor of [Kuhnel]." All other issues remained before the Chancery Division. A similar transfer of the first count of Streeper's complaint (violation of Section 40) to the DWC was ordered.
Judge Gibson entered an order granting Kuhnel's motion for class certification. The certified class was defined as follows: "All workers on whose behalf a payment was or will be made to satisfy a workers' compensation lien asserted by [CNA], which lien included or includes [counsel] fees, expert fees or other administrative costs and expenses." No members of the class have been formally notified of the pendency of this action. See R. 4:32-2(b).
After a hearing in the DWC on the remanded issues, the DWC concluded that CNA's portion of Kuhnel's counsel and expert fees were not properly chargeable as a portion of the lien pursuant to Section 40. In the Streeper case, the DWC similarly concluded that Aetna's medical examination for the workers' compensation claim (independent medical examination or "IME") and the costs for rehabilitative nurses services were not lienable under Section 40.
On defendants' motions, Judge Gibson entered an order dismissing the consumer fraud counts of both Kuhnel's and Streeper's complaints for failure to state a claim upon which relief can be granted, R. 4:6-2(e). After considering cross-motions for summary judgment on the various remaining counts of the complaints, Judge Gibson held in Kuhnel:
That the lien asserted by an employer or its workers' compensation insurance carrier in a workers' compensation matter pursuant to N.J.S.A. 34:15-40 against any recovery in a third-party action shall consist only of medical expenses incurred and compensation paid, and said compensation shall not include the respondent's portion of the petitioner's attorneys' fees nor the respondent's portion of the petitioner's experts' fees.
And in Streeper:
(a) A lien pursuant to N.J.S.A. 34:15-40 may not include an employer's or its insurance carrier's expenses for a defense *569 medical examination because such an examination is not a medical expense but is primarily for the benefit of the employer/insurance carrier and would not be reasonably necessary to the injured employee's recovery; and
(b) A lien pursuant to N.J.S.A. 34:15-40 shall not include an employer's or its insurance carrier's expenses for so-called rehabilitative nursing services as a medical expense unless based on the facts of the case it can be shown that the service primarily benefitted the employee and was reasonably necessary to the injured employee's recovery.[4]
As to Kuhnel, Judge Gibson also entered an order which 1) dismissed CNA's counterclaims with prejudice; 2) granted summary judgment in favor of CNA on Count Three of Kuhnel's complaint (fraud and negligent misrepresentation); 3) granted judgment in favor of Kuhnel on Count One of her complaint (violation of Section 40); 4) granted judgment in favor of Kuhnel on Count Six of her complaint (unjust enrichment); 5) granted judgment in favor of CNA dismissing Counts Four (negligence per se), Five (bad faith) and Seven (claims yet unknown against CNA) of Kuhnel's complaint; and 6) stated that the judgment entered shall apply retroactively only to Kuhnel and those members of the class "who have not as of November 6, 1997, reached an agreement incorporated by a writing or release of any workers' compensation lien asserted by [CNA]."
As to Streeper, Judge Gibson also entered an order which 1) provided that the declaratory judgment applies retroactively only to Streeper and those others similarly situated "for whom, as of November 6, 1997, a defendant's lien under N.J.S.A. 34:15-40 was an open question by reason of the lien's not having been resolved by judgment or by an agreement;" 2) granted judgment in favor of Streeper as to Count One and reduced Aetna's lien accordingly; 3) granted judgment in favor of Streeper on Count Six (unjust enrichment); 4) granted judgment in favor of Aetna dismissing Counts Three (fraud and negligent misrepresentation), Four (negligence per se), Five (bad faith) and Seven (claims against unknown affiliates of Aetna); and 5) denied Streeper's motion for class certification as moot.
Plaintiffs appeal and Aetna cross-appeals.

II.
While Aetna raises an issue as to the whether certain expenses fall within the scope of the trial judge's order, no parties challenge the merits of the declaratory judgment or Judge Gibson's interpretation of Section 40. Plaintiffs, however, challenge the trial judge's determination that the declaratory judgments apply retroactively only to the named plaintiffs and those other claimants whose Section 40 liens remained "open questions," i.e., not resolved by either judgment or agreement, as of November 6, 1997, the date of the oral decision. The rulings were to apply prospectively to all others. Specifically, plaintiffs assert that the decision should be given complete retroactive application to all parties, even those whose cases were settled or adjudicated and judgments entered, because 1) the rulings present no "new rule of law;" 2) CNA and Aetna failed to demonstrate any reasonable basis for reliance on "their self-serving interpretation of Section 40;" and 3) retroactive application of the ruling would not be unjust.
When confronted with an issue of retroactive or prospective application, a court may choose from four possible common law options:
(1) make the new rule of law purely prospective, applying it only to cases *570 whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted.
[Coons, supra, 96 N.J. at 425, 476 A.2d 763 (quoting State v. Burstein, 85 N.J. 394, 402-03, 427 A.2d 525 (1981)).]
Ultimately, the election of which approach to follow depends largely on "the court's view of what is just and consonant with public policy in the particular situation presented." Ibid. (quoting State v. Nash, 64 N.J. 464, 469, 317 A.2d 689 (1974)). Nevertheless, it is well recognized that retroactivity is the traditional rule in such cases, State v. Brimage, 153 N.J. 1, 26, 706 A.2d 1096 (1998) (citing Coons, supra, 96 N.J. at 425, 476 A.2d 763), but such retroactivity is not unlimited. Therefore, "sound policy reasons" may persuade a court to limit the retroactive effect of a ruling by according it only prospective application. These "sound reasons" are as follows:
(1) justifiable reliance by the parties and the community as a whole on prior decisions, (2) a determination that the purpose of the new rule will not be advanced by retroactive application, and (3) a potentially adverse effect retrospectivity may have on the administration of justice.
[Brimage, supra, 153 N.J. at 26, 706 A.2d 1096 (citing Coons, supra, 96 N.J. at 426, 476 A.2d 763).]
In limiting retroactivity, Judge Gibson relied heavily on the third prong enunciated in Brimage. He noted:
The problem with the kind of retroactive application that the plaintiff seeks here is the impact that it would have, or potentially have, on all the cases which have been resolved over the years, and when I say resolved, I mean cases that went to judgment or where releases were executed by the parties and where closure occurred. To disturb all of those hundreds or thousands of cases that could potentially be impacted by a ruling that went back six years would be dramatic, so the Court has to ask itself, what is there about this case that would motivate the Court to take such, I'll say, [a] drastic approach to the resolution of this problem? If there was some egregious conduct, as these complaints suggested, it seems to me that that might be incentive for disturbing, and probably would be incentive for disturbing these prior cases, but I haven't found that in these cases. There was no definitive guidance out there for CNA or Aetna in 1994 or three or two or one or before that, that would have told them, with any kind of clarity, that these charges were improper. That doesn't convince me that they were proper, but it does persuade me that their actions would not be, in any way, purposefully wrong or fraudulent or egregious or any of the other labels that might warrant a sweeping kind of conclusion that the plaintiffs have suggested here. And in terms of the impact on the administration of justice, it seems to me that the impact would be significant and negative.
I am satisfied that, given the absence of intentional wrongdoing, given the absence of guidelines, given the very murky language of the Workers' Compensation Act, there is nothing here to convince me that the Court should reach further than is necessary to implement this ruling. So it is my conclusion that the rulings that I've made should apply retroactively to this extent only, they should apply to the current plaintiffs because I believe that the current plaintiffs deserve the benefits of this ruling given the investment that they made. And I believe that this, ruling should also apply to any other plaintiffs similarly *571 situated who have not yet gone to judgment or reached an agreement incorporated by a writing or release. Stated differently, to the extent that there are pending cases out there for which the lienability of these items is still an open question, this ruling would apply and would bind CNA and would bind Aetna. Beyond that, the ruling would simply apply prospectively. That is the ruling of the Court.
Even assuming that the application of Section 40 presents no "new rule of law" or that defendants failed to demonstrate a reasonable basis for reliance on their interpretation of Section 40, we agree with Judge Gibson's analysis and suggest that the impact of such an application "on the administration of justice" is dispositive.
As a general rule, third-party actions which give rise to lien recovery are matters which have, at some stage, been involved in the litigation processan action was either threatened, commenced or fully litigated. In the overwhelming majority of these cases, plaintiffs were represented by counsel who either accepted the liens without question or negotiated the liens considering, among other things, the quantum of recovery in the third-party action, the amount of the lien and the willingness of the carrier to compromise. To suggest that these matters can or should be "undone" suggests a process that, on balance, will be more disruptive than productive.
We neither disregard nor minimize plaintiffs' argument that this result allows the carriers to retain "ill-gotten" funds. Yet in the context of litigated proceedings, where attorneys were able to challenge the lien and its components, but chose not to, we are not persuaded that this argument prevails over the imposition on the court and litigants of the reopening of potentially thousands of proceedings that have long since been resolved. This invites chaos, a result that we are not willing to sanction. Judge Gibson's limited retroactivity represents an appropriate balance of the competing interests, and we concur in that result.[5]

III.
Kuhnel and Streeper argue that there was a sufficient showing of facts to support a claim of fraud and misrepresentation and defeat a motion for summary judgment. Additionally, they claim that Judge Gibson erred by dismissing the consumer fraud count. Defendants argue that the court erred in granting declaratory relief and summary judgment as to unjust enrichment.
Common law fraud consists of "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely [on the misstatement], resulting in reliance by that party to his detriment." United Jersey Bank v. Kensey, 306 N.J.Super. 540, 550, 704 A.2d 38 (App.Div. 1997) (alteration in original) (citations omitted), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998). Negligent misrepresentation, on the other hand, requires proof that an "incorrect statement was negligently made and justifiably relied upon" and that injury was sustained as a consequence of that reliance. Carroll v. Cellco Partnership, 313 N.J.Super. 488, 502, 713 A.2d 509 (App.Div.1998).
Here, Judge Gibson found that plaintiffs proffered no competent evidence raising a factual question as to whether defendants knew the lien charges were inappropriate yet asserted them anyway. Similarly, he concluded that the lien expenses were not negligently asserted since there were no clear guidelines predating the cases which suggested that the charges were improper. Additionally, as to both allegations, the judge noted that plaintiffs made no showing of detrimental reliance, as they contested the lienability of the charges and held the money in escrow rather than remit it to defendants. We *572 agree with both his analysis and conclusion as to these issues.
Judge Gibson further concluded that there was no showing of sufficient facts to warrant application of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20(CFA). On appeal, plaintiffs rely on Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255, 263, 696 A.2d 546 (1997), a reliance that we find is misplaced. Plaintiffs' claims pertain strictly to defendants' interpretation of the workers' compensation statutes and do not implicate the marketing or sale of the policies to their employers by the carriers. The issues here involve the receipt of benefits, issues which have been held to be beyond the scope of the CFA. See Nikiper v. Motor Club of Am. Cos., 232 N.J.Super. 393, 401, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989); Pierzga v. Ohio Cas. Group of Ins. Cos., 208 N.J.Super. 40, 46, 504 A.2d 1200 (App. Div.), certif. denied, 104 N.J. 399, 517 A.2d 402 (1986).

IV.
In Streeper, the parties stipulated to a judgment against Aetna on Count VI of the complaint alleging unjust enrichment. The stipulation further provided: "[t]he agreement to resolve these claims by stipulation ... shall not be deemed a waiver of any argument any party has in opposition to the stipulated outcome and is understood not to affect the appealability of any issues so decided."
The parties agreed to hold the disputed portions of the lien due from plaintiffs in escrow pending the resolution of this action, and plaintiffs' attorneys were designated as escrow agent.
No monies were received by Aetna nor any benefit or payment that could be considered unjust. See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994); Caputo v. Nice-Pak Products, Inc., 300 N.J.Super. 498, 507, 693 A.2d 494 (App.Div.) certif. den. 151 N.J. 463, 700 A.2d 876 (1997); Associates Commercial Corp. v. Wallia, 211 N.J.Super. 231, 511 A.2d 709 (App.Div.1986). There was no basis for the entry of a judgment against Aetna for unjust enrichment nor do plaintiffs, in their appellate filings, suggest any such basis. Accordingly, we reverse the judgment against Aetna on Count VI of the Streeper complaint and dismiss that count. Any release of escrow was properly premised on the declaratory judgment in plaintiffs' favor.
We have carefully considered all of the remaining arguments as to the issues raised by the parties on this appeal. We conclude that they are without merit, R. 2:11-3(e)(1)(E), and we affirm substantially for the reasons set forth in Judge Gibson's comprehensive and thoughtful oral opinion of November 6, 1997.
The judgment entered in favor of plaintiffs as to Count VI of the Streeper Complaint (A-4689-97T5) is reversed. In all other respects the judgment in both A-4349-97T3 and A-4689-97T5 is affirmed.
NOTES
[1] The cases have not been consolidated but are joined for the purposes of this opinion.
[2] The date of the trial court's opinion.
[3] Most of the background facts pertaining to Streeper and Gaitanos are derived from their amended complaint, as the record does not contain sufficient supporting documentation for verification.
[4] Subsequent to the judgment in this case, we held that the proper standard to be applied was whether such rehabilitative nursing expenses are "necessary to cure and relieve claimant of the effects of the injury." Raso v. Ross Steel Erectors, Inc., 319 N.J.Super. 373, 375, 725 A.2d 690 (App.Div. 1999).
[5] We also again note that in Kuhnel the class action was never perfected by notice, and in Streeper, the class was never certified. Our holding in this case renders moot any further action in reference to the class issues.