984 A.2d 912 (2009)
411 N.J. Super. 161
David JOHNSON, Plaintiff-Respondent,
v.
Molly V.G.B. JOHNSON, Defendant-Appellant.
No. A-0704-08T1.
Superior Court of New Jersey, Appellate Division.
Submitted October 1, 2009.
Decided December 21, 2009.
*914 LaRocca & Associates, P.C., attorneys for appellant (Frank J. LaRocca and Melanie B. Andrews, of counsel and on the brief).
Law Offices of August J. Landi, attorneys for respondent (August J. Landi, of counsel and on the brief).
Before Judges PAYNE, C.L. MINIMAN and WAUGH.
The opinion of the court was delivered by
MINIMAN, J.A.D.
Defendant Molly V.G.B. Johnson appeals from an order confirming an arbitration award respecting custody and parenting time. Because the parties did not have the benefit of Fawzy v. Fawzy, 199 N.J. 456, 973 A.2d 347 (2009), at the time of the arbitration and because we conclude that decision should be applied retroactively to this appeal, we reverse.

I.
Plaintiff and defendant were married on October 26, 1994. Their first child was born in 2001 and their second child was born in 2003. The parties divorced on August 16, 2005. The final judgment of divorce incorporated the family and property settlement agreement, executed on May 24, 2005. The agreement included a joint custody arrangement designating plaintiff as the residential custodial parent for the children.
In 2007, the parties were experiencing issues regarding the amount of time that each parent would spend with the children. The parties agreed to binding arbitration to "resolve parenting differences and Parenting Time scheduling issues." A referral to arbitration was granted by a Family Part judge on October 31, 2007, which incorporated the previously executed arbitration agreement.
In the arbitration agreement, the parties agreed to have Mark White, Ph.D., serve as the arbitrator. The agreement made the arbitration subject to the New Jersey Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30. The agreement further specified that "[t]he decision of the selected arbitrator . . . shall be reviewable and subject to modification or vacation for any of the reasons recognized in N.J.S.A. 2A:23A-13 of the APDRA." It limited appeals to the Family Part for a determination of whether the arbitrator "failed to properly apply applicable law to the factual findings and issues presented for resolution through ADR." Also, the arbitration agreement referenced and adopted the provisions of N.J.S.A. 2A:23A-13(e)(4), allowing the Superior Court to review and modify a decision pursuant to N.J.S.A. 2A:23A-13(f) if a party is "prejudiced by the Arbitrator[] erroneously applying the law to the issues and facts presented for Alternative Resolution[.]"
Dr. White began the arbitration in this matter on December 5, 2007. The arbitration *915 proceedings consisted of meetings with the parties and their attorneys; interviews of the parties and the children; visits and observations of the children at each party's home; and consultations with Sandra Sessa, Ph.D., and Cheryl Daniel, L.C.S.W.
Dr. White delivered his findings and final decision on April 11, 2008. Dr. White's decision extended the amount of time the children would spend at plaintiff's home by limiting defendant's time to one weekday night and every other weekend. However, the decision extended defendant's weekends to include Sunday evenings. Also, defendant was given the majority of three-day weekends and other periods of vacation time to compensate for the disparity between her and plaintiff's allotted times with the children. The decision allowed for reconsideration of the visitation schedule if defendant submitted to an evaluation by a neuropsychologist specializing in attention deficit hyperactivity disorders and showed that her older child had three consecutive months of no tardy notices from school. The decision allowed for future meetings commencing on or about October 1, 2008, at which Dr. White could meet with the parties to consider further modifications of the schedule.
Defendant filed a motion for reconsideration on May 16, 2008, in which she requested that Dr. White reconsider the entire decision or clarify the defendant's vacation time with the children. Dr. White issued his response on May 22, 2008. Dr. White explained that "[t]he restructuring of the children's schedules was put forth on the basis of the children's needs, and not on the basis of a conclusion that [defendant] is `subaverage' or `inferior' or `inadequate' or `without boundaries or morals' as a parent."
Defendant then sent correspondence to plaintiff and Dr. White regarding removal of Dr. White from the matter in light of our June 16, 2008, decision in Fawzy v. Fawzy, 400 N.J.Super. 567, 948 A.2d 709 (App.Div.2008), aff'd on other grounds, 199 N.J. 456, 973 A.2d 347 (2009). Plaintiff filed a motion to confirm Dr. White's decision, and defendant filed a cross-motion opposing confirmation and requesting modification of custody and visitation.
On September 26, 2008, the motions were argued at which time defendant relied on our holding in Fawzy. She asserted that our opinion invalidated final binding arbitration awards dealing with custody and parenting time issues because APDRA does not allow full plenary review of the best interests of the children but rather limits review to the issues identified in N.J.S.A. 2A:23A-13. Plaintiff, on the other hand, argued that Fawzy was inapplicable because it pertained to arbitration under the Arbitration Act, N.J.S.A. 2A:23B-1 to -32, and the arbitration in this matter was under APDRA.
The Family Part judge delivered an oral decision on September 29, 2008, in which he confirmed Dr. White's decision. He reviewed the arbitrator's decision in detail. He found from that decision that plaintiff was more likely than defendant to provide a structured and stable environment. He found the defendant was frequently tardy getting and returning the children, which had a negative impact on them. He recited the scope of review under APDRA as set forth in N.J.S.A. 2A:23A-13(f) and then considered our opinion in Fawzy, specifically the focus placed on the court's role to determine the best interests of the children. The judge noted that while we stated in Fawzy "that custody and parenting time issues cannot be subject to binding arbitration or to any form of arbitration that restricts the court's ability to consider the best interests of the child," Fawzy, *916 supra, 400 N.J.Super. at 572, 948 A.2d 709, he found that the record before him gave him the ability to determine that Dr. White's decision was in the best interests of the children. This appeal followed. After appellate briefing was completed, the Supreme Court decided Fawzy, supra, 199 N.J. 456, 973 A.2d 347.

II.
Defendant asserts the judge erred in confirming Dr. White's decision in light of our above-quoted holding in Fawzy. She urges the arbitrator made no fact-findings or legal conclusions that would enable the judge in his parens patriae role to determine the best interests of the children. Thus, it was not an "`appropriate and credible record' from which to conclude that the arbitrator's recommendation was in the best interests of the minor children." She points out there was no formal record of the proceedings from which the judge could conduct a de novo review. She contends the judge was required to conduct a plenary hearing to determine whether the award was in the children's best interests, as required by our decision in Fawzy, supra, 400 N.J.Super. at 572, 948 A.2d 709, and that the judge erred in affirming the arbitral award.
Additionally, defendant urges the judge has developed a bias against her because he found plaintiff was more likely to provide a stable and structured environment for the children when the arbitrator made no such finding. The judge further found that defendant bore primary responsibility for the children's skewed perception of her because she was late picking them up, ignoring plaintiff's on-going anger issues and their effect on the children. He also found defendant was constantly tardy when the arbitrator merely observed defendant was "less punctual" than plaintiff, being late by five to ten minutes and always calling. She urges the judge's perception of her clouded his ability to fulfill his parens patriae duty to determine the best interests of the children.[1]
Plaintiff, on the other hand, contends that this matter is distinguishable from our decision in Fawzy because the trial judge had the ability to modify or vacate the decision under N.J.S.A. 2A:23A-13 if Dr. White had erroneously applied the law to the facts and issues. He also contends our scope of review is limited and that we must defer to the judge's fact-findings. Plaintiff urges that defendant has not met her burden of demonstrating a genuine issue as to a material fact requiring a plenary hearing. He contends the judge's decision was not arbitrary, unreasonable or contrary to the evidence, especially because APDRA only permits review of legal conclusions, not fact-findings. The APDRA does not permit a plenary hearing to resolve fact issues on appeal from an award and, thus, he argues the judge acted properly in confirming the award on the papers before him.
Finally, plaintiff contends the trial judge displayed no bias against defendant because the judge expressed that he did not conclude that defendant "was subaverage or inferior or without boundaries or morals as a parent" and that he had no intention "to reduce the time [the] children spent with their loving capable mother."

III.
"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when *917 supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413, 713 A.2d 390. This is especially so "when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117, 693 A.2d 92 (1997). "Furthermore, matrimonial courts possess special expertise in the field of domestic relations." Cesare, supra, 154 N.J. at 412, 713 A.2d 390 (citing Brennan v. Orban, 145 N.J. 282, 300-01, 678 A.2d 667 (1996)).
On the other hand, where the issue is purely legal, we owe no special deference to the judge's conclusions. Manalapan Realty, L P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."); N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J.Super. 81, 89, 906 A.2d 463 (App.Div. 2006), certif. denied, 190 N.J. 257, 919 A.2d 850 (2007) ("Our obligation to defer to the trial court does not extend to issues of law. . . ."), certif. denied, 190 N.J. 257, 919 A.2d 851 (2007).
For more than twenty-five years, the parties to a divorce proceeding in New Jersey have been able to resolve domestic disputes through arbitration and have the resulting arbitration awards enforced by the court. Faherty v. Faherty, 97 N.J. 99, 477 A.2d 1257 (1984). There, the Supreme Court held that spouses are free to arbitrate family issues, noting that "[i]n this sensitive and intensely private area of domestic disputes, arbitration expressly contracted for by the spouses is highly desirable." Id. at 108, 477 A.2d 1257. The Court approved the arbitration of alimony and child-support disputes, but as to the latter, observed that "the courts have a nondelegable, special supervisory function in the area of child support that may be exercised upon review of an arbitrator's award." Id. at 109, 477 A.2d 1257. As a result, it held
that whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award. This review should consist of a two step analysis. First, as with all arbitration awards, the courts should review child support awards as provided by N.J.S.A. 2A:24-8.[[2]] Second, the courts should conduct a de novo review unless it is clear on the face of the award that the award could not adversely affect the substantial best interests of the child.
[Id. at 109-10, 477 A.2d 1257 (footnote omitted).]
The Court deferred extending its decision to child-custody and parenting-time issues, noting that with the development of a fair and workable mediation or arbitration process, id. at 110, 477 A.2d 1257, "it may become evident that a child's best interests are as well protected by an arbitrator *918 as by a judge." Id. at 111, 477 A.2d 1257.
Three years after the Faherty decision, the Legislature enacted APDRA, effective February 25, 1987. L. 1987, c. 54, § 1. It, too, provided for vacation and modification of awards:
c. The award shall be vacated on the application of a party who either participated in the alternative resolution proceeding or was served with a notice of intention to have alternative resolution if the court finds that the rights of that party were prejudiced by:
(1) Corruption, fraud or misconduct in procuring the award;
(2) Partiality of an umpire appointed as a neutral;
(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.
. . . .
e. The court shall modify the award if:
(1) There was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award;
(2) The umpire has made an award based on a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted;
(3) The award is imperfect in a matter of form, not affecting the merits of the controversy; or
(4) The rights of the party applying for the modification were prejudiced by the umpire erroneously applying law to the issues and facts presented for alternative resolution.
[N.J.S.A. 2A:23A-13.]
As to erroneous applications of the law, APDRA provides:
Whenever it appears to the court to which application is made, pursuant to this section, either to vacate or modify the award because the umpire committed prejudicial error in applying applicable law to the issues and facts presented for alternative resolution, the court shall, after vacating or modifying the erroneous determination of the umpire, appropriately set forth the applicable law and arrive at an appropriate determination under the applicable facts determined by the umpire. The court shall then confirm the award as modified.
[N.J.S.A. 2A:23A-13(f).]
In the arbitration agreement at issue here, the parties limited their appeal rights under APDRA to those provided by N.J.S.A. 2A:23A-13(e)(4) and (f).
While this arbitration proceeded, the trial court's decision in Fawzy was pending on appeal before us. There, the parents agreed on the record under oath to binding, final, nonappealable arbitration of their custody and parenting-time disputes pursuant to N.J.S.A. 2A:23B-1 to -32.[3] *919 Fawzy, supra, 400 N.J.Super. at 569, n. 2, 948 A.2d 709. After the arbitrator issued an award, the father obtained an order to show cause why the award should not be vacated. Id. at 569, 948 A.2d 709. The trial judge denied the application and entered an amended judgment of divorce incorporating the custody and parenting-time award. Ibid. We considered Faherty but concluded that until the Supreme Court addressed the issue of arbitration of custody and parenting-time, such arbitration cannot be binding and cannot "restrict[] the court's ability to consider the best interests of the child." Id. at 572, 948 A.2d 709. We reversed and remanded for a plenary hearing on custody and parenting-time issues. Ibid.
When our decision in Fawzy reached the Supreme Court, the Court expanded its holding in Faherty. The Court observed that the case was "really about the intersection between parents' fundamental liberty interest in the care, custody, and control of their children, and the state's interest in the protection of those children." Fawzy, supra, 199 N.J. at 472-73, 973 A.2d 347. The Court held that "the constitutionally protected right to parental autonomy includes the right to submit any family controversy, including one regarding child custody and parenting time, to a decision maker chosen by the parents." Id. at 477, 973 A.2d 347. It further held, "the bundle of rights that the notion of parental autonomy sweeps in includes the right to decide how issues of custody and parenting time will be resolved," including by arbitration. Ibid.
The Court then considered "the standard of review of a child-custody arbitration award." Ibid. It held, "where no harm to the child is threatened, there is no justification for the infringement on the parents' choice to be bound by the arbitrator's decision. In the absence of a claim of harm, the parties are limited to the remedies provided in the Arbitration Act." Id. at 478, 973 A.2d 347. A finding of harm will overcome "the presumption in favor of the parents' choice of arbitration." Id. at 479, 973 A.2d 347. However, because "an empty arbitration record can[not] supply any basis on which to evaluate a party's claim that the award threatens harm to the child," the Court required that more of a record be created during the arbitration "to avoid a complete replay of the arbitration proceedings." Id. at 480, 973 A.2d 347.
We therefore direct that when parties in a dissolution proceeding agree to arbitrate their dispute, the general rules governing the conduct of arbitration shall apply, N.J.S.A. 2A:23B-1 to -32. However, in respect of child-custody and parenting-time issues only, a record of all documentary evidence shall be kept; all testimony shall be recorded verbatim; and the arbitrator shall state in writing or otherwise record his or her findings of fact and conclusions of law with a focus on the best-interests standard. It is only upon such a record that an evaluation of the threat of harm can take place without an entirely new trial. Any arbitration award regarding child-custody and parenting-time issues that results from procedures other than those that we have mandated will be subject to vacation upon motion.
[Id. at 480-81, 973 A.2d 347 (emphasis added).]
Thus, courts will enforce arbitration decisions relating to custody and parenting-time *920 only if the arbitration meets these standards.
These requirements obviously state a new rule of law as neither APDRA nor the Uniform Arbitration Act as adopted in New Jersey require a record to be made of the proceedings. To determine whether a new rule should be applied retroactively or prospectively, the court must consider the following factors:
"`(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice.'" The inquiry is very fact sensitive.
[Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 74, 711 A.2d 282 (1998) (citations omitted).]
These factors support retroactive application of Fawzy. First, the purpose of the rule is to provide parents with the option of handling child-custody and parenting-time issues through arbitration while ensuring that arbitration results in no harm to the child. Clearly, protection of the best interests of the children will be furthered by application of Fawzy to those arbitrations where best-interests review was not available. Second, it was clear after Faherty that the availability of arbitration for custody and parenting-time issues had not been decided by the Court. Thus, no degree of reliance could have been placed on the "old rule" as none existed. Third, in considering the effect retroactive application would have on the administration of justice, we must consider whether retroactive application should be limited to pipeline retroactivity or full retroactivity.
The general rule in civil cases is that a new ruling will apply to all cases that have not reached final judgment. Williams v. Bell Tel. Labs., Inc., 132 N.J. 109, 122, 623 A.2d 234 (1993). Full retroactivity is not appropriate where it would "expose the judicial system to the undue burden of resolving numerous concluded matters." Olds v. Donnelly, 150 N.J. 424, 450, 696 A.2d 633 (1997); see also Kuhnel v. CNA Ins. Cos., 322 N.J.Super. 568, 579-80, 731 A.2d 564 (App.Div.1999) (declining to grant full retroactivity where the impact on the administration of justice would be "significant and negative"), certif. denied, 163 N.J. 12, 746 A.2d 458, cert. denied, 531 U.S. 819, 121 S.Ct. 61, 148 L.Ed.2d 27 (2000). Pipeline retroactivity is appropriate where it will serve the interests of justice by permitting currently litigating parties to resolve their claims on the merits. Olds, supra, 150 N.J. at 450, 696 A.2d 633. Pipeline retroactivity is further appropriate where the benefit of allowing settled issues to remain undisturbed outweighs the need to do justice. Rutherford Educ. Ass'n v. Bd. of Educ., 99 N.J. 8, 25-26, 489 A.2d 1148 (1985) (citations omitted).
In this case, application of full retroactivity risks significantly and negatively impacting the administration of justice by inundating the courts with motions for vacation of arbitration awards regarding child-custody and parenting-time issues that resulted from procedures deviating from those outlined in Fawzy, supra, 199 N.J. at 480-481, 973 A.2d 347, yet which had been reasonably satisfactory to the parents. As such, we find that pipeline retroactivity is appropriate here so that previous awards will not be disturbed but currently litigating parties, including those here, will have the benefit of the Court's *921 decision in Fawzy to protect the best interests of children.
Here, the arbitration proceedings did not meet the guidelines set forth in Fawzy.[4] The arbitration agreement states: "There shall be no transcript proceedings at ADR, the detailed findings of the Arbitrator[] shall constitute the record, as supplemented by the written certified statement submitted by the parties in advance of the ADR proceedings." Thus, there is no record of the testimony, as Fawzy requires. Fawzy, supra, 199 N.J. at 480, 973 A.2d 347. Neither do we have a record of all documentary evidence considered, if any. Without an adequate record, the Family Part judge here could not evaluate the threat of harm to the children, id. at 480-81, 973 A.2d 347, and could not confirm the award. He erred in doing so.
Finally, we do not agree with plaintiff that Fawzy is distinguishable because the parties agreed to proceed under the APDRA, whereas the Arbitration Act was controlling in Fawzy. The Arbitration Act states that its sections "shall not apply to the substance and procedure of [APDRA]." N.J.S.A. 2A:23B-32. However, the acts are similar in that neither is immune to public policy concerns. Mt. Hope Dev. Assoc. v. Mt. Hope Waterpower Project, 154 N.J. 141, 149, 712 A.2d 180 (1998).
In Mt. Hope, the court referred to the decision in Faherty, noting that "[a]s with arbitration, when parties proceed under the APDRA, there may be other limited circumstances where public policy would require appellate court review . . . beyond that which is provided for in N.J.S.A. 2A:23A-18." Id. at 152, 712 A.2d 180. Custody and parenting time clearly implicate public policies that require more expansive review than N.J.S.A. 2A:23A-13 allows.
Accordingly, out of a concern that the Family Part judge may be committed to his findings based on the arbitration award, we remand the matter to another Family Part judge for discovery on custody and parenting-time issues and a plenary hearing to resolve them. Johnson v. Johnson, 390 N.J.Super. 269, 275-76, 915 A.2d 85 (App.Div.2007); P.T. v. M.S., 325 N.J.Super. 193, 220-21, 738 A.2d 385 (App. Div.1999); Carmichael v. Bryan, 310 N.J.Super. 34, 49, 707 A.2d 1357 (App.Div. 1998). There are certainly genuine disputes of fact spread upon the record on appeal that cannot be resolved on the papers. Innes v. Innes, 117 N.J. 496, 520, 569 A.2d 770 (1990); Lepis v. Lepis, 83 N.J. 139, 159, 416 A.2d 45 (1980); Fusco v. Fusco, 186 N.J.Super. 321, 329, 452 A.2d 681 (App.Div.1982).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] In light of our retroactive application of Fawzy, we need not consider defendant's alternative argument that it was error to confirm the award because it was not yet final.
[2] That section of the 1923 arbitration act required a court to vacate an award where it "was procured by corruption, fraud, or undue means," "there was evident partiality or corruption," "the arbitrators were guilty of misconduct in refusing to postpone the hearing. . . or in refusing to hear evidence," and "the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8. The act also permitted modification or correction of an award in certain circumstances. N.J.S.A. 2A:24-9.
[3] In 2003 the Legislature enacted a modified version of the Uniform Arbitration Act of 2000. Assembly Judiciary Committee Statement to Senate, No. 514, L. 2003, c. 1, §§ 1-32, eff. Jan. 1, 2003. Effective the same date, the Legislature limited N.J.S.A. 2A:24-1 to -11 "to an arbitration or dispute arising from a collective bargaining agreement or a collectively negotiated agreement." N.J.S.A. 2A:24-1.1. Thus, the arbitration act considered by the Faherty Court no longer applies to agreements to arbitrate domestic disputes.
[4] Furthermore, it is clear that the arbitration agreement itself is not enforceable because none of Fawzy's requirements for a binding agreement was satisfied. Fawzy, supra, 199 N.J. at 482, 973 A.2d 347.